84 A.3d 294

**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Mark Newton SPOTZ, Appellee.**

Supreme Court of Pennsylvania.

Submitted Sept. 13, 2013.

Decided Jan. 17, 2014.

6

Trudy Gale Lumadue, Esq., for Commonwealth of Pennsylvania.

Paul David Boas, Esq., Pittsburgh, for Mark Newton Spotz.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, STEVENS, JJ.

## *OPINION*

Justice STEVENS.

The Commonwealth appeals from the order of the Superior Court, which reversed the order denying Appellee's petition pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541–9546, vacated his judgment of sentence, and remanded for a new trial. We reverse the order of the Superior Court and remand to that court for consideration of Appellee's PCRA issues that remain in abeyance.

10

## I. *Background*

The facts underlying Appellee's conviction and judgment of sentence are discussed more fully in this Court's prior decision on discretionary review of Appellee's direct appeal, *Commonwealth v. Spotz*, 582 Pa. 207, 870 A.2d 822 (2005), *cert. denied*, 546 U.S. 984, 126 S.Ct. 564, 163 L.Ed.2d 474 (2005) (*Spotz I* ). In order to place the Commonwealth's current claims in context, some background is required.

The evidence adduced at Appellee's jury trial established that, on January 31, 1995, Appellee, who was on parole for a robbery conviction at the time, and his brother, Dustin Spotz, engaged in an argument at the home of their mother and stepfather in Clearfield County. The argument began when Dustin's fiancée's teenage son placed a pet gerbil in front of Appellee's face while he was watching television, resulting in Appellee yelling at the child and threatening to physically harm him. This angered Dustin, and the argument escalated into a physical confrontation, during which Dustin stabbed Appellee twice in the upper back with a butter knife, slightly wounding him. In response, Appellee threatened to kill Dustin, and he proceeded upstairs, returning with a handgun. Appellee fired eight shots at Dustin, two of which fatally struck Dustin in the chest. After Dustin fell to the ground, Appellee leaned over him, spit on his face, and stated, "There you go, pussy."

Dustin's fiancée tried to call the police; however, Appellee grabbed the phone and declared nobody could call anyone until he escaped the scene. Appellee put the handgun in his pants and attempted to retrieve the spent bullet shells from the kitchen floor. Appellee, along with his paramour, Christine Noland, then fled the house in a vehicle driven by Appellee's stepfather. Three days later, on February 3, 1995, the police apprehended Appellee at a motel in Carlisle, Pennsylvania.[1]

1. During a pretrial hearing on Appellee's motion for change of venue, references were made to three murders, which Appellee was accused of committing in Schuylkill, York, and Cumberland Counties between February 1, 1995, and February 3, 1995, after he fled Clearfield County in connection with the instant case. Appellee was separately tried,

Following his arrest and return to Clearfield County, Appellee was charged with first degree murder, third degree murder, voluntary manslaughter, aggravated assault, recklessly endangering another person, carrying a firearm without a license, and former convict not to own a firearm.[2] Appellee took the stand at trial, claiming self-defense and defense of others, seeking an outright acquittal of the non-firearms charges. In his version of events, Appellee indicated that, after Dustin said he was going to burn down the house and kill the kids, Dustin went into the kitchen where their stepfather was sitting and began throwing furniture. N.T., Trial, 9/25/1995, at 69–70, 73–74. In response, Appellee rushed into the kitchen, tried to push Dustin into a corner, and exchanged blows with him. N.T., Trial, 9/25/1995, at 75. With Appellee holding him, Dustin reached into the dish strainer, grabbed a butter knife, and stabbed Appellee. N.T., Trial, 9/25/1995, at 76. Appellee ran out of the kitchen, went upstairs to get his coat, which had a gun in the pocket, and returned to the kitchen where Dustin stood holding butter knives. N.T., Trial, 9/25/1995, at 81. Appellee admitted he told his stepfather to "get out of the way," and he fired two shots at the floor. N.T., Trial, 9/25/1995, at 83. Appellee indicated Dustin looked at him and stated, "You don't have any fuckin' hair on your ass to shoot me, Pussy." N.T., Trial, 9/25/1995, at 83. Appellee claimed Dustin had a butter knife in each hand and was about to attack him, his stepfather, and his mother, and

convicted, and sentenced to death for the three murders. Each of these death sentences have been upheld by this Court on direct appeal. *See Commonwealth v. Spotz*, 552 Pa. 499, 716 A.2d 580 (1998), *cert. denied*, 526 U.S. 1070, 119 S.Ct. 1466, 143 L.Ed.2d 551 (1999) (Schuylkill County); *Commonwealth v. Spotz*, 562 Pa. 498, 756 A.2d 1139 (2000), *cert. denied*, 532 U.S. 932, 121 S.Ct. 1381, 149 L.Ed.2d 307 (2001) (York County); *Commonwealth v. Spotz*, 563 Pa. 269, 759 A.2d 1280 (2000), *cert. denied*, 534 U.S. 1104, 122 S.Ct. 902, 151 L.Ed.2d 871 (2002) (Cumberland County). Moreover, Appellee filed appeals from the denial of PCRA relief in each of these cases, and we affirmed. *See Commonwealth v. Spotz*, 587 Pa. 1, 896 A.2d 1191 (2006) (Schuylkill County); *Commonwealth v. Spotz*, 616 Pa. 164, 47 A.3d 63 (2012) (York County); *Commonwealth v. Spotz*, 610 Pa. 17, 18 A.3d 244 (2011) (Cumberland County).

**2.** 18 Pa.C.S. §§ 2502(a), 2502(c), 2503, 2702(a), 2705, 6106, and 6105, respectively.

12

therefore, he shot Dustin in defensive response. N.T., Trial, 9/25/1995, at 84–85.

On cross-examination, the prosecutor questioned Appellee about his failure to assist Dustin after shooting him, his flight, and his subsequent failure to report the shooting to the police on the night in question and to tell the police he was defending himself. The primary focus of the cross-examination was upon Appellee's conduct immediately after the shooting as demonstrated in the following relevant exchange:

Q: You were bleeding heavily?

A: I said my only concern was if I was going to die. I was bleeding, man. I was bleeding bad. I was hurting. I didn't know what was happening.

Q: But you didn't go to the DuBois Hospital; you didn't go to the Clearfield Hospital. Why?

A: When I was walking across the parking lot, Chris[tine Noland] start[ed] filling my head with a lot of stuff that just didn't make sense. To my knowledge and the way I remember, my brother wasn't dead when I left. He was still alive. He was on the floor. Everything—I mean, a lot of things I remember now that weren't clear when this stuff happened. You know. It was traumatic, you know, I was shocked. I didn't understand a lot of things for a long time.

She told me I killed my brother. I was on the run from parole. And if I went in the hospital, the cops would arrest me. Now, she had me scared. One, I didn't want to go back to jail for anymore nonsense like getting speeding tickets. And two, she said I killed somebody that I didn't know I killed, you know. And to me, I didn't kill him.

Q: And you didn't stick around to help your brother, either; did you?

A: I did what I could do.

Q: You didn't stay to report this to the authorities that night?

A: I went to the hospital, man. I was stabbed.

Q: You didn't go into the hospital?

A: I didn't say I went in. I went.

**Q:** Did you go back to Chestnut Grove to talk to the police?

**A:** No.

**Q:** No.

**A:** No.

**Q:** To tell them that you were defending yourself. Did you tell the police that?

**A:** I just believe I—

**Q:** Answer my question, sir. Did you tell the police that night that you were defending yourself?

**A:** I didn't talk to the police that night.

N.T., Trial, 9/25/1995, at 150–52.

Immediately after this exchange, the prosecutor followed up with two questions, which, although they did not specifically refer to Appellee's arrest, nevertheless were broadly phrased to encompass pre-arrest and post-arrest periods:

**Q:** Other than today, did you ever tell the police that you were defending yourself?

**A:** I never talked to the police to this day. They never asked me questions. They never asked me anything.

**Q:** The police never talked to you, or attempted to talk to you?

**A:** They said things to me. They never tried to question me. They put guns in my face and said if I ever walked the street, they'd hunt me down and kill me theirself [*sic* ]. That's what the cops said to me.

N.T., Trial, 9/25/1995, at 152. Appellee's trial counsel did not object to either of these questions.

Moreover, during closing argument, the prosecutor argued to the jury the evidence revealed Appellee did not act in self-defense. The prosecutor specifically made reference to Appellee's conduct after the shooting, including his flight after the shooting and his failure to inform the police he shot Dustin in self-defense. The prosecutor also made the statements:

But, no, he came right back down [the stairs]. He came right back down. Another discrepancy in their claim of self-

defense. Testimony was you mother F"n son of a bitch, you're dead. He said that. Does that sound like somebody in self-defense?

He never told the authorities that he was defending himself. Why? Because he fled. Does that sound like somebody who is defending himself and others, that he fled, didn't stay there to tell the police what happened? Does that sound like somebody who is defending himself or defending his family? No. Instead, he fled, he took off.

N.T., Trial, 9/26/1995, at 45–46. Appellee's trial counsel did not object to the prosecutor's closing argument.

With regard to the trial court's instruction to the jury regarding justification, the trial court charged the jury, in relevant part, as follows:

Now, justification generally. Conduct which the Defendant reasonably believes to be necessary to avoid a harm or evil to himself or to another is justifiable if the harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged.

That means, that a person is permitted to use such force as is necessary, but no more, just as much force as is necessary, to prevent a harm or evil to himself or to another, a harm or evil that he reasonably believes to be necessary, to avoid a harm or evil to himself or to another. That is the general rule of justification.

The use of force upon or toward another person is justifiable when the Defendant reasonably believes that such force is immediately necessary for the purpose of protecting himself or another against the use of unlawful force by the other person on the present occasion, that it is immediately necessary to protect himself or another against the use of unlawful force by the other person on the present occasion.

That is the general rule of justification, members of the jury, or self-defense, the general rule. But this situation involves the use of deadly force. And you'll recall the

Court's definition of deadly force. The use of deadly force is not justifiable under this, or any other section, unless the Defendant reasonably believes that such force is immediately necessary to protect himself or another against death or serious bodily injury.

Moreover, the Defendant cannot use deadly force if he knows that he can avoid the necessity of using such force with complete safety by retreating. The statute provides that if the Defendant is in his own dwelling, as that has been defined for you, then he does not have to retreat before using deadly force.

If you find that this shooting occurred in the Defendant's dwelling, then he would be relieved from the necessity of retreating before using deadly force. If he was not in his own dwelling, if you find such, then he must retreat if he can do so safely before he can use deadly force.

Still on this matter of justification, members of the jury, the basic rule, as I said, is that a Defendant is justified in using force against another person if he reasonably believes he is in immediate danger of unlawful force from that person and reasonably believes it is necessary then and there immediately to use the force which he does to protect himself or another.

Again, folks, deadly force is another matter. If a Defendant employs deadly force to protect himself, his use of force must meet the following requirements, as well as the basic rule. The Defendant must reasonably believe that he is in immediate danger of death or serious bodily injury from the person against whom he uses deadly force, and must reasonably believe it is necessary then and there to use deadly force upon that person to protect himself, or another person.

The Defendant must have been free from fault in provoking or continuing the difficulty which led to the use of deadly force, and the Defendant must have violated no duty to retreat.

And, folks, whether or not the Defendant had a duty to retreat here depends upon your determination of whether

16

these events occurred in the Defendant's dwelling, as that has been defined for you, or not. If it did occur in his dwelling, he had no duty to retreat. If it did not occur in his dwelling, then he did have a duty to retreat if he could do so safely.

Now, the Commonwealth has the burden of disproving the defense of justification. So you cannot find the Defendant guilty of any of these crimes unless you are satisfied beyond a reasonable doubt that the Defendant did not reasonably believe he was in immediate danger of death or serious bodily injury from Dustin Spotz, or that others were not in danger of death or immediate bodily injury from Dustin Spotz, or that the Defendant did not reasonably believe it was necessary then and there immediately to use deadly force upon Dustin Spotz to protect himself or another from death or serious bodily injury, or that the Defendant was not free from fault in provoking or continuing the difficulty which led to his use of deadly force, or that the Defendant violated a duty to retreat, if you find that such duty existed.

N.T., Trial, 9/26/1995, at 58–62. Appellee's trial counsel did not object to the trial court's instruction to the jury.

On September 26, 1995, the jury acquitted Appellee of first and third degree murder, but convicted him of voluntary manslaughter (heat of passion), aggravated assault, recklessly endangering another person, and the firearms offenses. On October 17, 1995, the trial court sentenced Appellee to an aggregate term of seventeen and one-half years to thirty-five years in prison. No timely direct appeal followed.

However, on January 16, 1996, Appellee filed a timely petition for PCRA relief in which he claimed ineffective assistance of trial counsel for failing to file a timely appeal from his judgment of sentence and seeking the restoration of his direct appeal rights *nunc pro tunc*. On November 17, 1998, following a hearing, the PCRA court granted Appellee relief, and he later filed a timely *nunc pro tunc* appeal. In his subsequent Pa.R.A.P. 1925(b) statement of matters complained of on appeal, Appellee presented several claims of ineffective assis-

tance of counsel and trial court error. The trial court filed an opinion briefly addressing each claim, but noting it was hamstrung in its evaluation of the claims since no evidentiary hearing had been held regarding the ineffectiveness claims.

Appellee's then counsel was permitted to withdraw his appearance, and new counsel filed an amended Rule 1925(b) statement alleging trial counsel was ineffective in six additional instances and the cumulation of these issues entitled Appellee to relief. In his direct appeal brief before the Superior Court, Appellee raised no claims of trial court error, but instead, listed six claims of ineffective assistance of trial counsel and a derivative seventh claim respecting the cumulative effect of the specific claims. At this point, due to the procedural posture of the case, no evidentiary hearing with respect to the new ineffectiveness claims had been held, and thus, trial counsel had not been heard from and the trial court did not address the claims.

On October 4, 2001, in an unpublished memorandum decision, the Superior Court panel granted Appellee summary relief on his claim trial counsel was ineffective in failing to object to the above referenced portions of the prosecutor's cross-examination of Appellee, as well as the prosecutor's closing argument, on the grounds that they included impermissible and inherently prejudicial references to Appellee's post-arrest silence. Accordingly, deeming it unnecessary to address Appellee's remaining ineffective assistance of counsel claims, the Superior Court panel reversed Appellee's judgment of sentence and remanded for a new trial.

The Commonwealth subsequently filed a petition for allowance of appeal challenging the Superior Court's summary finding trial counsel was ineffective. Appellee filed a protective cross-petition alleging the Superior Court erred in failing to address and resolve his additional ineffective assistance of counsel claims. This Court granted both the petition and cross-petition.

Upon review, in first addressing the Commonwealth's appeal, we noted the Superior Court did not err in reaching the

merits of the ineffectiveness of counsel claims, which were raised for the first time on direct appeal, since its disposition was entered before *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726 (2002), was decided. *Spotz I, supra.* Noting the three-prong test to be applied in determining whether trial counsel was ineffective as set forth in *Strickland,* and adopted by *Pierce,*[3] we began with an examination of the "arguable merit" prong. Specifically, we indicated this Court has held, as a matter of state constitutional law, that cross-examination of a testifying defendant as to his post-arrest silence is a violation of due process, while both this Court and the United States Supreme Court have held there is no such violation when pre-arrest, pre-*Miranda*[4] silence is used at trial in a similar fashion. *Spotz I, supra.* In examining the prosecutor's closing argument to the jury in light of this Court's and the High Court's precedent, we noted that "[i]f the only remark at issue in this case was the prosecutor's reference in summation to [A]ppellee 'never' telling authorities he was defending himself, the question of arguable merit might be close." *Spotz I,* 582 Pa. at 223, 870 A.2d at 831. Given the context in which the prosecutor's remark was made, and the legitimate point being made, we held it "would be difficult to say that counsel was constitutionally obliged to object to this single remark in closing." *Id.*

On the other hand, under our precedent, we concluded "the disputed questions posed during the prosecutor's cross-examination of [A]ppellee arguably were subject to objection." *Id.* We concluded "there were grounds for counsel to object to th[e] questioning[, and, t]herefore, the Superior Court did not err in finding that the claim possesses arguable merit." *Spotz I,* 582 Pa. at 223, 870 A.2d at 832.

3. To establish trial counsel's ineffectiveness, a petitioner must demonstrate: (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for the course of action or inaction chosen; and (3) counsel's action or inaction prejudiced the petitioner. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987).

4. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

However, in examining the "reasonable basis" and "prejudice" prongs of the ineffectiveness test as set forth in *Strickland* and *Pierce,* we found the Superior Court's summary resolution thereof "troubling." With regard to "reasonable basis," we specifically held this is not a case where it can be said, as a matter of law, that counsel had no reasonable basis for failing to object to the prosecutor's temporal references during the cross-examination of Appellee, and "this Court has expressed a distinct preference for a hearing on counsel's strategy before venturing to hold that counsel lacked a reasonable basis for his or her action or inactions." *Spotz I,* 582 Pa. at 224, 870 A.2d at 832 (citations omitted). Thus, since there had been no evidentiary hearing, the counsel whose performance was at issue had not been heard from, and there were no factual determinations made by the trial court, we determined that the then existing record could not support the Superior Court's summary conclusion trial counsel had no reasonable basis for failing to object to the challenged portions of the prosecutor's cross-examination of Appellee. *Spotz I,* 582 Pa. at 224, 870 A.2d at 832.

Moreover, with regard to the *Strickland/Pierce* "prejudice" prong, we noted the Superior Court panel erroneously applied what amounted to a "presumption of prejudice," thus improperly concluding the references to Appellee's post-arrest silence were "innately prejudicial." *Spotz I, supra.* We held the Superior Court ought to have used the *Strickland/Pierce* ineffectiveness measurement for assessing actual prejudice, "weighing the precise nature of the references against the strength of the evidence on the point at issue." *Spotz I,* 582 Pa. at 227, 870 A.2d at 834 (citations omitted). However, we ultimately concluded that, since the issue of prejudice was not passed upon in the first instance by the trial court after an evidentiary hearing, "we need not and should not decide whether [A]ppellee was prejudiced by counsel's failure to object to the prosecutor's line of questioning on cross-examination." *Spotz I,* 582 Pa. at 229–30, 870 A.2d at 835. We held "the question is better determined by the trial court in the

first instance following an evidentiary hearing." *Spotz I,* 582 Pa. at 230, 870 A.2d at 835.

As to the appropriate mandate, having determined that the then existing record could not support the Superior Court's holding trial counsel was ineffective and a new trial was required, and *Grant* establishes the preferred forum in which to pursue an ineffectiveness claim is via the PCRA, we dismissed the claim without prejudice to Appellee's right to pursue it under the PCRA.[5] *Spotz I, supra.*

With regard to Appellee's cross-appeal, in which Appellee alleged the Superior Court erred in failing to address four additional claims of trial counsel's ineffectiveness, which Appellee raised for the first time on appeal, we concluded the Superior Court committed no error in this regard. *Spotz I, supra.* Consistent with our foregoing analysis, we concluded the appropriate disposition of the collateral claims under *Grant* was dismissal without prejudice to Appellee's right to pursue the claims under the PCRA. *Spotz I, supra.* Thus, we ultimately reversed the Superior Court's grant of a new trial, reinstated Appellee's judgment of sentence, and dismissed Appellee's ineffectiveness claims without prejudice to his rights to pursue the collateral claims under the PCRA. *Spotz I, supra.*

Thereafter, Appellee filed a timely *pro se* PCRA petition, the court appointed counsel to represent Appellee, and counsel filed an amended PCRA petition presenting seventeen claims, including the claim trial counsel was ineffective in failing to object to the prosecutor's references to Appellee's post-arrest silence during the cross-examination of Appellee as set forth *supra,* as well as the trial court's instruction to the jury regarding justification as set forth *supra.* The PCRA court held an evidentiary hearing, at which Appellee's trial counsel testified, acknowledging that, from the outset, it was his plan to handle all of the murder charges filed against Appellee in

5. In so doing, we noted that, if Appellee sought PCRA relief of the claim, the PCRA court should look to our Opinion in *Spotz I, supra* for guidance and must defer to our conclusion as it relates to "arguable merit."

the four counties. N.T., PCRA Hearing, 2/13/2008, at 101. With regard to the prosecutor's cross-examination of Appellee at trial, the primary focus at the PCRA hearing as it relates to trial counsel's failure to object is demonstrated by the following relevant exchange between Appellee's PCRA counsel and trial counsel:

> **Q:** ... [A]m I right that [Appellee] was cross-examined on why he didn't tell the police he was acting in self-defense?
> **A:** Yeah. He was asked whether he told the police that he was defending himself at the time he was stabbed.
> **Q:** And you agree there's no contemporaneous objection on the record at this passage. Is that fair to say?
> **A:** No.
> **Q:** And later, in fact, in closing argument—this is on September 26, 1995, at page 46—that the prosecutor, in fact, argued this very fact. And I quote, He never told the authorities that he was defending himself.
> **A:** Okay.
> **Q:** And again, there's no contemporaneous objection by you of that?
> **A:** No. I remember reading that when you sent me the transcript, and it still didn't refresh my memory that that had even occurred. When I look at it, I'm a little disappointed in myself.
> **Q:** And you agree now that those were improper references?
> **A:** At the time, if I'd have caught it, I would have objected.
> **Q:** And that's my question. Did you have a strategic or tactical reason not to object to the line of cross-examination of [Appellee] as to his post-arrest silence or the exploitation of that by the prosecutor in closing?
> **A:** No.

N.T., PCRA Hearing, 2/13/2008, at 57–58.

The issue was further explored on cross-examination at the PCRA hearing when the following relevant exchange occurred between the prosecutor and trial counsel as it related to trial

counsel's failure to object to the prosecutor's cross-examination of Appellee at trial:

**Q:** Okay. Now we're on to issue no. 1, that is about the prosecutor's questioning to [Appellee] during cross-examination—

**A:** Yeah.

**Q:** —about his post-arrest silence.

**A:** Right.

**Q:** Now, [Appellee] testified during the trial; right?

**A:** Yes.

**Q:** And he did a pretty good job testifying; didn't he?

**A:** I thought so, yeah.

**Q:** And he's articulate, came across well to the jury; right?

**A:** Well, he told the truth.

**Q:** And you said earlier, I think that you said that you missed it and you were disappointed in yourself because you missed it when the prosecutor asked a question; right?

**A:** Yeah.

**Q:** And if you would have noticed it, it would have been something you would have objected to?

**A:** Yes.

**Q:** So the fact that you missed it when you're sitting right here in the middle of trial, it's likely that it was a pretty fleeting comment; isn't it?

**A:** I can't say that. I mean, I might have been looking at the notes of the officer, what the statement was, what he was looking at when he was testifying. I couldn't tell you. I mean, I've never tried a perfect case, and I probably never will.

**Q:** And the Constitution doesn't allow for a perfect trial; it calls for a fair trial. Right?

**A:** Yeah, it does call for it, yeah.

**Q:** Fair, not perfect?

**A:** Right.

\* \* \*

**Q:** But again, this goes for—you've been asked in every single one of these issues whether you had a reasonable or tactical basis for not doing it, and you're just saying right now you can't even tell us whether you would have had one or not.

**A:** What I'm telling you is that I missed it, okay.

**Q:** I understand—

**A:** It's not that I found it proper or improper. It's just I didn't catch it at all.

N.T., PCRA Hearing, 2/13/2008, at 122–124, 126.

As it related to the trial court's justification charge, Appellee's PCRA counsel questioned trial counsel as to whether he objected to the trial court's failure to inform the jury that a defendant's duty to retreat is the same duty as the person who is being defended, and, if he did not object, the reasons for failing to do so. The relevant exchange in this regard is as follows:

**Q:** Now, the defense in this case was not just self-defense, it was also defense of others. Am I correct?

**A:** Oh, absolutely.

\* \* \*

**Q:** And do you agree, that when assessing the duty to retreat, that it was important for the judge to instruct the jury that, as to defense of others, the applicable duty to retreat is that of a person defending?

**A:** Right.

**Q:** And in your review of the charge as to the self-defense and duty to retreat, is it fair to say that this court did not, the trial court did not, so instruct the jury?

**A:** That's right.

**Q:** And did you have a strategic or tactical reason not to object and to insist that the jury be charged that the duty to retreat, the applicable duty to retreat, is naturally the person defending?

**A:** No. I just—I missed that one.

N.T., PCRA Hearing, 2/13/2008, at 54–56.

Additionally, the prosecutor cross-examined Appellee's trial counsel at the PCRA hearing as to the reasons he did not object to the trial court's justification instruction, and he indicated he did not object because he thought, at the time, the instruction was sufficient. N.T., PCRA Hearing, 2/13/2008, at 122. Moreover, trial counsel admitted he "liked" Appellee and he was upset when Appellee was convicted of voluntary manslaughter in Clearfield County. N.T., PCRA Hearing, 2/13/2008, at 127, 130.

At the conclusion of the PCRA hearing, by Order and Opinion entered on March 31, 2010, the PCRA court denied Appellee relief under the PCRA. As it relates to Appellee's claim trial counsel was ineffective in failing to object to the prosecutor's references to Appellee's post-arrest silence during the cross-examination of Appellee, the PCRA court recognized it was bound by this Court's previous holding in *Spotz I, supra,* that the claim possessed "arguable merit." *See Commonwealth v. Starr,* 541 Pa. 564, 664 A.2d 1326 (1995) (holding, under the "law of the case" doctrine, courts involved in later phases of litigated matters should not reopen issues decided by higher courts in earlier phases of the matter). With regard to the *Strickland/Pierce* "reasonable basis" prong, the PCRA court held trial counsel had a reasonable basis for not objecting to the prosecutor's impermissible cross-examination of Appellee. In so holding, the PCRA court specifically stated:

At the time of trial, trial counsel was intending on representing [Appellee] at not only the Clearfield County murder trial, but also the three other murder trials in York, Schuylkill, and Cumberland Counties. *See* Transcript of Proceedings, PCRA Hearing, February 13, 2008, p. 101. The Court believes that trial counsel allowed the prosecution to make the remarks about Petitioner's post-arrest silence with full knowledge that this would not only provide a basis for a new trial in Clearfield County, but could also lead to new trials being granted in other counties as well.[8] Trial counsel

testified at the PCRA evidentiary hearing that he "liked" [Appellee], and that he was aware that if his appeal was granted he would receive a new trial. *Id.* at 127–30.

[8] The Court notes that [Appellee's] trial in Clearfield County had significant ramifications in the sentencing phases in the other three trials, especially regarding the death sentence. 'In particular, pursuant to 42 Pa.C.S. § 9711(d)(12), the jury unanimously found as an aggravating circumstance that [Appellee] had been convicted of a voluntary manslaughter (in connection with the Clearfield County death of Dustin) committed either before or at the time of the present offense.' *Spotz*, 587 Pa. at 57, 896 A.2d at 1224.

The Court finds trial counsel's testimony in regards to simply 'missing' the prosecutor's two statements about [Appellee's] post-arrest silence [during cross-examination] to not be credible. The Court believes that trial counsel strategically allowed said statements to be introduced, without objection, as a means of seeking a new trial if an unfavorable verdict was returned. Therefore, the Court finds trial counsel had a reasonable basis for not objecting to the prosecution's impermissible references to [Appellee's] right to remain silent.

*Commonwealth v. Spotz*, No. CP–17–CR–0000347–1995, *slip op.* at 14–15 (C.P.Clearfield, Mar. 31, 2010) (footnote in original).

With regard to the *Strickland/Pierce* "prejudice" prong, the PCRA court concluded the prosecutor's references to Appellee's post-arrest silence during the cross-examination of Appellee, "were not so substantial [so as] to undermine the truth-determining process such that no reliable adjudication of guilt or innocence could have taken place." *Spotz*, No. CP–17–CR–0000347–1995, *slip op.* at 12. That is, viewing all of the evidence before the jury, including the testimony offered by Appellee, the PCRA court held the evidence establishing Appellee's guilt for voluntary manslaughter, and related offenses, was "overwhelming" and the prejudicial effect of the statements "insignificant" by comparison. Further, the PCRA court noted the challenged cross-examination of Appellee provided "no direct evidentiary linkage between [Appellee's] post-arrest silence and an inference of guilt arising from that

silence." *Id.* at 13 (citation omitted). The PCRA court con-
cluded, "[m]ost importantly, the verdict in this case was
favorable, as the jury acquitted [Appellee] on the more serious
counts of first and third degree murder." *Id.* at 13. Thus,
finding counsel had a "reasonable basis," and Appellee did not
meet his burden of establishing "actual prejudice," the PCRA
court rejected Appellee's claim trial counsel was ineffective in
failing to object to the challenged portion of the prosecutor's
cross-examination of Appellee.

As it relates to Appellee's claim trial counsel was ineffective
for failing to object to the trial court's jury instruction regard-
ing justification, the PCRA court began with an examination
of the *Strickland/Pierce* "arguable merit" prong. In so doing,
the PCRA court noted Appellee averred, *inter alia,* he shot
Dustin in defense of others, *i.e.,* his mother and stepfather,
and, thus, the jury should have been instructed, as a matter of
law, Appellee had no duty to retreat since the applicable duty
is that of the person being defended. That is, Appellee
argued, the trial court's charge, which did not instruct the jury
Appellee's duty to retreat was the same as the people Appellee
was defending, i.e., his mother and stepfather, improperly
absolved the Commonwealth of its burden to disprove Appel-
lee's justification defense of others by a reasonable doubt such
that trial counsel should have objected.

In rejecting Appellee's argument, the PCRA court found the
precedent cited by Appellee did not support his argument, and
thus, the PCRA court found no "arguable merit" to Appellee's
claim. Furthermore, examining the trial court's charge as a
whole, the PCRA court rejected Appellee's claim the trial
court's charge relieved the Commonwealth of its burden to
disprove Appellee's justification defense of others by a reason-
able doubt.

Having found Appellee did not meet his burden of proving
the *Strickland/Pierce* "arguable merit" prong, the PCRA
court further summarily rejected Appellee's argument regard-
ing the *Strickland/Pierce* "prejudice" prong. The PCRA
court concluded Appellee did not meet his burden of proving
the outcome of his trial would have been different had the jury

been instructed on the duty to retreat in defense of others in the manner sought by Appellee.[6] Thus, the PCRA court found Appellee was not entitled to relief on his claim trial counsel was ineffective in failing to object to the trial court's jury instruction as it related to Appellee's duty to retreat in defense of others.

Appellee filed a counseled appeal and, on January 13, 2012, Judge Ott, authoring an unpublished memorandum for the three judge panel of the Superior Court, reversed the PCRA court, vacated Appellee's judgment of sentence, and remanded for a new trial. *Commonwealth v. Spotz*, 43 A.3d 518 (Pa.Super.2012) (table), No. 770 WDA 2010, *slip op.* Specifically, the panel granted Appellee relief on his claims that trial counsel was ineffective in failing to object to the above-quoted prosecutor's cross-examination of Appellee, as well as the trial court's jury instruction regarding justification, including the concepts of "defense of others" and "duty to retreat." [7]

With regard to trial counsel's failure to object to the prosecutor's references to Appellee's post-arrest silence during the cross-examination of Appellee, the Superior Court recognized this Court previously held the claim possessed "arguable merit" and the Superior Court was bound by this holding. *Starr, supra.* Accordingly, the Superior Court proceeded to examine the *Strickland/Pierce* "reasonable basis" and "preju-

---

**6.** Having concluded Appellee did not meet his burden of proving "arguable merit" and "prejudice," the PCRA court did not specifically address the *Strickland/Pierce* "reasonable basis" prong in its analysis of whether trial counsel was ineffective in failing to object to the trial court's justification charge.

**7.** Judge Musmanno joined Judge Ott's majority decision, while Senior Judge Colville authored a separate concurring memorandum in which he highlighted his agreement with the majority that Appellee proved all three prongs of the *Strickland/Pierce* test as it related to his claim trial counsel was ineffective in failing to object to portions of the prosecutor's cross-examination of Appellee as set forth *supra.* Senior Judge Colville suggested he would reverse the PCRA court and remand for a new trial solely on the issue of trial counsel's ineffectiveness in failing to object to the challenged portions of the prosecutor's cross-examination of Appellee. Presumably, Senior Judge Colville would not have reached Appellee's ineffectiveness of counsel claim as it related to counsel's failure to object to the trial court's justification charge to the jury.

28

dice" prongs. As to whether trial counsel had a "reasonable basis" for not objecting to the challenged prosecutorial cross-examination, the Superior Court, at the outset, acknowledged the PCRA court did not find trial counsel to be credible when he testified he simply "missed" the statements regarding post-arrest silence. However, the Superior Court held "[w]hile we cannot change the finding that the PCRA court did not believe counsel's explanation of missing an issue, our inability to overturn a credibility determination does not require acceptance of the PCRA court's conclusion that trial counsel possessed a reasonable trial strategy." *Spotz*, No. 770 WDA 2010, *slip op.* at 7. That is, based on its review of the record, including the notes of testimony from the trial and PCRA hearings, the Superior Court concluded the following:

[There is] no support for the PCRA court's determination that trial counsel intentionally failed to object for the purpose of creating an appellate issue. This determination appears to be grounded upon the PCRA court noting that counsel liked his client and an after-the-fact realization that the conviction for manslaughter was an aggravating factor in the death sentences imposed in his subsequent trials. We note the 'reasonable trial strategy' proposed by the PCRA court is not supported by the record and presumes counsel acted unethically.

*Id.* at 7–8.

Regarding whether Appellee was prejudiced by counsel's failure to object to the challenged portions of the prosecutor's cross-examination of Appellee, the Superior Court, rejecting the PCRA court's conclusion there was no prejudice to Appellee given the overwhelming evidence supporting guilt, held the evidence was not so "overwhelming that it rendered the error harmless." *Id.* at 8 (footnote omitted). On this issue, the Superior Court specifically stated:

The record reveals that the references to [Appellee's] silence went to the heart of his defense. [Appellee] testified he acted in self-defense as well as the defense of his parents. [Appellee] had a right to remain silent after his arrest. The Commonwealth sought to use that silence to demonstrate his claims of self-defense and defense of others

were false. There are few situations where a reference to post-arrest silence could be more prejudicial.

*Id.* at 8. Thus, the Superior Court concluded Appellee satisfied all three prongs of the *Strickland/Pierce* ineffectiveness test as it relates to trial counsel's failure to object to the prosecutor's references to Appellee's post-arrest silence during the cross-examination of Appellee.

With regard to Appellee's claim trial counsel was ineffective for failing to object to the trial court's jury instruction regarding justification, concluding the claim involved concepts such as "defense of others" and the "duty to retreat," the Superior Court began with an examination of whether, under the *Strickland/Pierce* test, the claim possessed "arguable merit." In so doing, the Superior Court examined the language of the trial court's justification charge, as set forth *supra,* in light of the relevant statutory language applicable to "self-defense" under 18 Pa.C.S. § 505,[8] "defense of others" under 18 Pa.C.S. § 506,[9] and "dwelling" under 18 Pa.C.S. § 501.[10] The Superi-

---

8. At the relevant time in question, 18 Pa.C.S. § 505 provided, in pertinent part:

 **§ 505. Use of force in self-protection**
 **(a) Use of force justifiable for protection of the person.**—The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.
 **(b) Limitations on justifying necessity for use of force.**—
 
 \* \* \*
 
 (2) The use of deadly force is not justifiable under this section unless the actor believes that such force is necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat; nor is it justifiable if:
 (i) the actor, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter; or
 (ii) the actor knows that he can avoid the necessity of using such force with complete safety by retreating . . ., except that:
 (A) the actor is not obliged to retreat from his dwelling or place of work, unless he was the initial aggressor[.] . . .
 18 Pa.C.S. § 505(a), (b)(2)(i)-(ii)(A) (bold in original). Effective August 29, 2011, the legislature amended Section 505; however, the amendments are inapplicable here.

9. At the relevant time in question, 18 Pa.C.S. § 506 provided, in pertinent part:

or Court concluded the trial court did not properly explain Appellee's duty to retreat as it related to the defense of others, *i.e.,* his mother and stepfather.[11] The Superior Court specifically held:

> [Appellee's] duty to retreat in defense of others was tied to his parents' duty[.] [12] [Appellee's] duty to retreat, in defending his parents, was directly equal to their duty to retreat. That is to say, in defending his parents, who are clearly within their dwelling, [Appellee] had no more duty to retreat than his parents. This concept was not explained to the jury. Instead, the jury was instructed that in defending his parents, if it was not his dwelling, [Appellee] was not entitled to use deadly force if he could safely retreat. This

**§ 506. Use of force for the protection of other persons**
(a) **General rule.**—The use of force upon or toward the person of another is justifiable to protect a third person when:
 (1) the actor would be justified under section 505 (relating to use of force in self-protection) in using such force to protect himself against the injury he believes to be threatened to the person whom he seeks to protect;
 (2) under the circumstances as the actor believes them to be, the person whom he seeks to protect would be justified in using such protective force; and
 (3) the actor believes that his intervention is necessary for the protection of such other person.
(b) **Exceptions**—
* * *
 (3) Neither the actor or the person whom he seeks to protect is obliged to retreat when in the dwelling or place of work of the other to any greater extent than in his own.
18 Pa.C.S. § 506(a)(1)-(3), (b)(3) (bold in original). Effective August 29, 2011, the legislature amended Section 506; however, the amendments are inapplicable here.

10. 18 Pa.C.S. § 501, pertaining to definitions, provides that a "Dwelling" is "[a]ny building or structure, including any attached porch, deck or patio, though movable or temporary, or a portion thereof, which is for the time being the home or place of lodging of the actor."

11. The Superior Court clarified it was not addressing any possible errors in terms of self-defense since the evidence clearly showed Appellee disengaged from the confrontation and then returned. *Commonwealth v. Spotz,* 770 WDA 2010, slip op. at 14 n. 13.

12. The Superior Court collectively referred to Appellee's mother and stepfather as Appellee's parents.

is an incorrect statement of the law that was central to [Appellee's] defense.

\* \* \*

[T]he incorrect jury charge on justification, dwelling, the defense of others, and the duty to retreat, went to the heart of [Appellee's] defense. The jury charge, as stated, allowed the jury to discount the defense of his parents if the jury determined [Appellee] violated a duty to retreat. Because [Appellee's parents] had no duty to retreat in their own dwelling and [Appellee's] duty to retreat in protecting them was identical, the charge improperly allowed the jury to discount the defense and convict upon a false statement of law.

*Spotz*, No. 770 WDA 2010, *slip op.* at 16–17 (footnote added). Thus, the Superior Court held Appellee's claim his trial counsel was ineffective for failing to object to the trial court's jury instruction regarding justification possessed "arguable merit."

Turning to the remaining prongs of the *Strickland/Pierce* test, the Superior Court summarily held:

While there was evidence a jury could rely on to reject the defense of others, that evidence is not so overwhelming to render the errors harmless. Additionally, there is no evidence indicating trial counsel had a reasonable basis for failing to raise a timely objection to the errors. As such, all three prongs of an ineffectiveness claim have been met[.]

*Spotz*, No. 770 WDA 2010, *slip op.* at 17.

Thus, finding Appellee met all three prongs of the ineffectiveness test as it relates to trial counsel's failure to object to the challenged portions of the prosecutor's cross-examination of Appellee at trial and the challenged portions of the trial court's justification charge, the Superior Court reversed the PCRA court's order, vacated Appellee's judgment of sentence, and remanded for a new trial.[13]

The Commonwealth filed a Petition for Allowance of Appeal with this Court, which was granted on November 28, 2012.

**13.** In light of the holdings indicated *supra,* the Superior Court found it unnecessary to address Appellee's remaining appellate claims.

We accepted the following four issues, as framed by the Commonwealth, for review:

(1) Whether the Superior Court erred when it exceeded its scope of review and rejected the trial court's credibility finding with respect to trial counsel's testimony at the PCRA hearing?

(2) Whether the Superior Court erred in finding that [Appellee] was unduly prejudiced by counsel's failure to object to the prosecution's references to [Appellee's] silence?

(3) Whether the Superior Court erred when it failed to review trial counsel's actions/inactions with regard to the jury instructions and failed to make a determination as to whether counsel had a reasonable basis for his actions/inactions?

(4) Whether the Superior Court erred in finding that [Appellee] was unduly prejudiced by trial counsel's failure to object to the jury instruction as to justification with respect to defense of others and the duty to retreat?

*Commonwealth v. Spotz,* 619 Pa. 167, 58 A.3d 748 (2012) (*per curiam* ).

These issues pose purely legal questions: thus, our review of the Superior Court's determinations is plenary and de novo. *Commonwealth v. Mallory,* 596 Pa. 172, 941 A.2d 686 (2008), *cert. denied,* 555 U.S. 884, 129 S.Ct. 257, 172 L.Ed.2d 146 (2008). "To the extent review of the PCRA court's determinations is implicated, an appellate court reviews the PCRA court's findings of fact to determine whether they are supported by the record, and reviews its conclusions of law to determine whether they are free from legal error." *Commonwealth v. Colavita,* 606 Pa. 1, 21, 993 A.2d 874, 887 (2010). The scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level. *Commonwealth v. Sam,* 597 Pa. 523, 952 A.2d 565 (2008), *cert. denied,* 558 U.S. 828, 130 S.Ct. 50, 175 L.Ed.2d 42 (2009).

## II. *Discussion*

The issues presented on appeal involve ineffective assistance of trial counsel, and thus, we begin with a summary of the legal framework governing PCRA petitions raising such claims. As relevant here, a PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). "Counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him." *Colavita,* 606 Pa. at 21, 993 A.2d at 886 (citing *Strickland, supra* ). In Pennsylvania, we have refined the *Strickland* performance and prejudice test into a three-part inquiry. *See Pierce, supra.* Thus, to prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result. *Commonwealth v. Ali,* 608 Pa. 71, 86, 10 A.3d 282, 291 (2010). "If a petitioner fails to prove any of these prongs, his claim fails." *Commonwealth v. Simpson,* 620 Pa. 60, 66 A.3d 253, 260 (2013) (citation omitted). Generally, counsel's assistance is deemed constitutionally effective if he chose a particular course of conduct that had some reasonable basis designed to effectuate his client's interests. *See Ali, supra.* Where matters of strategy and tactics are concerned, "[a] finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." *Colavita,* 606 Pa. at 21, 993 A.2d at 887 (quotation and quotation marks omitted). To demonstrate prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Commonwealth v. King,* 618 Pa. 405, 57 A.3d 607, 613 (2012)

34

(quotation, quotation marks, and citation omitted). " '[A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding.' " *Ali*, 608 Pa. at 86–87, 10 A.3d at 291 (quoting *Commonwealth v. Collins*, 598 Pa. 397, 957 A.2d 237, 244 (2008) (citing *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052)). With this legal framework in mind, we now examine the issues presented by the Commonwealth for our review.

The Commonwealth's first and second issues are interrelated in that the issues focus on elements of Appellee's claim trial counsel was ineffective in failing to object to the prosecutor's references to Appellee's post-arrest silence during the cross-examination of Appellee as set forth *supra*. Specifically, in its first issue, the Commonwealth questions whether the Superior Court improperly invaded the fact-finding province of the PCRA court by exceeding its authority and rejecting credibility determinations related to the "reasonable basis" prong. In its second issue, the Commonwealth questions the propriety of the Superior Court's analysis as it relates to the "prejudice" prong.[14]

With regard to the *Strickland/Pierce* "reasonable basis" prong, which has factual and legal elements, the Commonwealth acknowledges Appellee's trial counsel testified at the PCRA hearing he failed to object to the references to Appellee's post-arrest silence, which were elicited during the prosecutor's cross-examination of Appellee at trial, because he simply "missed" the references. However, the Commonwealth avers, as was within its province, the PCRA court specifically found Appellee's trial counsel's PCRA testimony not to be credible. *Commonwealth v. Johnson*, 600 Pa. 329, 345, 966 A.2d 523, 532 (2009) ("The findings of a post-conviction court, which hears evidence and passes on the credibility of witnesses, should be given great deference.") (quotation and quotation marks omitted). Instead, the Commonwealth ar-

14. The Commonwealth acknowledges this Court previously found the Superior Court did not err in finding arguable merit to Appellee's claim trial counsel was ineffective in failing to object to the challenged portion of the prosecutor's cross-examination of Appellee. *Starr, supra.*

gues, the PCRA court concluded Appellee's trial counsel strategically permitted the challenged cross-examination during trial as a means of seeking a new trial in the event the jury returned a verdict unfavorable to Appellee. That is, the Commonwealth asserts, based on the fact the PCRA court observed Appellee's trial counsel's demeanor during the hearing, as well as the fact Appellee's trial counsel testified he "liked" Appellee, indicated he planned to represent Appellee at his upcoming three murder trials, and suggested he was aware Appellee could receive a new trial due to trial counsel's ineffectiveness, the PCRA court properly concluded trial counsel's testimony he simply "missed" the references was not credible. Thus, the Commonwealth contends the Superior Court was bound by the PCRA court's credibility determination since the determination was supported by the record. *Commonwealth v. Hutchinson*, 611 Pa. 280, 25 A.3d 277, 284 (2011), *cert. denied,* —— U.S. ——, 132 S.Ct. 2711, 183 L.Ed.2d 70 (2012) (appellate court is bound by credibility determination of PCRA court where such determination is supported by the record).

In response, Appellee argues the Superior Court did not improperly overturn the PCRA court's credibility determination as it relates to trial counsel's testimony that he "missed" the prosecutor's references, and in fact, the Superior Court explicitly recognized that it could not "change the finding that the PCRA court did not believe counsel's explanation of missing an issue[.]" *Spotz*, No. 770 WDA 2010, *slip op.* at 7. However, the Superior Court properly concluded ·that it was not bound by the PCRA court's "invented" strategy, *i.e.,* counsel intentionally failed to object with the aim of giving Appellee a potentially viable ineffectiveness claim, since such a determination was not supported by the record. *Commonwealth v. Cook*, 597 Pa. 572, 952 A.2d 594 (2008) (suggesting we are not bound by PCRA court's findings of fact where such are not supported by the record).

We agree with the Commonwealth that the PCRA court was free to reject as incredible Appellee's trial counsel's testimony that he simply "missed" the prosecutor's references to Appel-

lee's post-arrest silence. This credibility determination was within the PCRA court's fact-finding authority and is entitled to great deference. *Commonwealth v. Philistin*, 617 Pa. 358, 53 A.3d 1, 25 (2012) (concluding a "PCRA court's credibility findings are to be accorded great deference") (quotations and quotation marks omitted). However, since *Strickland/Pierce* requires an objective assessment of the reasonableness of counsel's performance, this deference does not extend so far as to permit the PCRA court to base its decision on speculation derived from the testimony which it finds to be credible. *See Spotz I*, 582 Pa. at 225, 870 A.2d at 832 (indicating an objectively reasonable basis is required under *Strickland/Pierce* ). Here, the PCRA court engaged in speculation when it concluded trial counsel strategically permitted the challenged cross-examination, without objection, as a means of seeking a new trial if an unfavorable verdict was returned. While the PCRA court explained it arrived at its theory based on the fact it found credible trial counsel's general testimony (1) he intended to represent Appellee at his three other murder trials, (2) he testified he "liked" Appellee, and (3) he was aware that if Appellee's appeal was granted he would receive a new trial, these cited facts do not support the PCRA court's theory under the objective assessment of reasonableness required by *Strickland/Pierce*. Simply put, while the PCRA court was free to disbelieve trial counsel's testimony he simply "missed" the challenged prosecutorial references, and we recognize few, if any, lawyers will admit to planting errors, an objective assessment of the record does not support the intentional, nefarious strategy provided by the PCRA court in the case *sub judice*. As we explained in *Spotz I*, *supra*, there are many reasons supporting, and a dearth of incentives for, trial counsel's decision not to object to the challenged prosecutorial references in this particular case. *See Spotz I*, 582 Pa. at 224–226, 870 A.2d at 832–833. However, under the circumstances here, inasmuch as the "reasonable basis" theory advanced by the PCRA court is not objectively supported by the record, we conclude, on this basis, the Superior Court did not err in rejecting the theory as it pertains to trial counsel's failure to object to the prosecutor's references to Appellee's

post-arrest silence, which were elicited during the cross-examination of Appellee at trial.[15]

■ With regard to the *Strickland/Pierce* "prejudice" prong, the Commonwealth contends the Superior Court erred in concluding Appellee met his burden of demonstrating that, but for his trial counsel's failure to object to the challenged portion of his cross-examination, the outcome of the trial would have been more favorable for Appellee. *See Ali, supra* (defining the *Strickland/Pierce* "prejudice" prong). The Commonwealth submits that, contrary to this Court's holding and directive in *Spotz I*, in determining whether Appellee met the "prejudice" prong, the Superior Court did not properly analyze the nature of the prosecutor's post-arrest references against the strength of the prosecution's case at trial. *See Commonwealth v. DiNicola*, 581 Pa. 550, 866 A.2d 329 (2005) (indicating mere revelation of silence does not establish innate prejudice for ineffectiveness purposes and, instead, the reference to the defendant's silence must be weighed against the strength of the evidence). Instead, the Commonwealth argues, the Superior Court applied an incorrect "harmless error" standard and summarily concluded the evidence against Appellee was not "so overwhelming that it rendered the error harmless." Pointing to the fact the nature of the prosecutor's references to Appellee's post-arrest silence was "passing," and the context of the references did not suggest to the jury that Appellee's post-arrest silence was equated with a tacit admission of guilt, as well as detailing the evidence refuting Appellee's claim of self-defense, the Commonwealth submits Appellee did not meet his burden of proving "actual prejudice." Moreover, the Commonwealth notes the Superior Court's decision was contradictory in that, on the one hand, the court

15. Additionally, citing to *Nix v. Whiteside*, 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986), the Commonwealth submits the Superior Court improperly concluded the PCRA court's strategy could not constitute a "reasonable basis" as a matter of law. However, in light of our conclusion the PCRA court's "invented" strategy is not supported by the record, we decline to address whether the *Strickland/Pierce* "reasonable basis" prong encompasses trial counsel purposefully permitting error so that a defendant might later have a potentially viable claim of ineffectiveness.

38

found prejudice on the basis the prosecutor's references went to the "heart" of Appellee's self-defense claim, while, on the other hand, the Superior Court specifically noted the evidence clearly showed Appellee did not act in self-defense since he was not free from fault in continuing the incident. Additionally, the Commonwealth notes, as this Court did in *Spotz I*, that the verdict in this case, though not an outright acquittal, nevertheless was favorable, as the verdict acquitted Appellee of the more serious counts of first and third degree murder.

In response, Appellee argues the Superior Court properly recognized the prosecutor's references to Appellee's post-arrest silence directly attacked Appellee's credibility on his core defenses of self-defense and defense of others. Appellee submits the prosecutor's attack on Appellee's credibility as to this issue undermined Appellee's credibility as to the rest of his testimony, including Appellee's testimony establishing he reasonably believed that deadly force was necessary to protect himself and/or his family from Dustin, resulting in the jury convicting him of voluntary manslaughter as opposed to out-right acquitting him. That is, Appellee argues the only possible inference the jury could draw from the prosecutor's references on cross-examination was that Appellee would not have remained silent if he had reasonably believed he had been acting in defense of self or others. As to the strength of the prosecution's case at trial, Appellee, detailing the testimony and evidence presented by the defense at trial, submits the Superior Court did not err in holding "[w]hile there was evidence that supported the verdict, we cannot agree that the evidence was so overwhelming that it rendered the error harmless." *Spotz*, No. 770 WDA 2010, *slip op.* at 8.

We agree with the Commonwealth that the Superior Court did not utilize the correct standard in concluding Appellee was prejudiced by trial counsel's failure to object to the prosecutor's references to Appellee's post-arrest silence during the cross-examination of Appellee. The panel applied the "harmless error" standard in determining whether the *Strickland/Pierce* "prejudice" prong was met. However, as this Court suggested in *Spotz I*, "the test for prejudice in the

ineffectiveness context is more exacting than the test for harmless error, and the burden of proof is on the defendant, not the Commonwealth." *Spotz I*, 582 Pa. at 227, 870 A.2d at 834 (citations omitted). As a general and practical matter, it is more difficult for a defendant to prevail on a claim litigated through the lens of counsel ineffectiveness, rather than as a preserved claim of trial court error. *Commonwealth v. Gribble*, 580 Pa. 647, 863 A.2d 455, 472 (2004). This Court has addressed the difference as follows:

[A] defendant [raising a claim of ineffective assistance of counsel] is required to show actual prejudice; that is, that counsel's ineffectiveness was of such magnitude that it 'could have reasonably had an adverse effect on the outcome of the proceedings.' *Pierce*, 515 Pa. at 162, 527 A.2d at 977. This standard is different from the harmless error analysis that is typically applied when determining whether the trial court erred in taking or failing to take certain action. The harmless error standard, as set forth by this Court in *Commonwealth v. Story*, 476 Pa. [391], 409, 383 A.2d [155], 164 [(1978)] (citations omitted), states that "[w]henever there is a *reasonable* possibility' that an error 'might have contributed to the conviction,' the error is not harmless." This standard, which places the burden on the Commonwealth to show that the error did not contribute to the verdict beyond a reasonable doubt, is a lesser standard than the *Pierce* prejudice standard, which requires the defendant to show that counsel's conduct had an actual adverse effect on the outcome of the proceedings. This distinction appropriately arises from the difference between a direct attack on error occurring at trial and a collateral attack on the stewardship of counsel. In a collateral attack, we first presume that counsel is effective, and that not every error by counsel can or will result in a constitutional violation of a defendant's Sixth Amendment right to counsel. *Pierce, supra*.

*Gribble*, 580 Pa. at 676, 863 A.2d at 472 (emphasis in original).

In light of the distinct review standards applicable to a preserved claim of trial court error versus a claim sounding in

ineffective assistance of counsel under the PCRA, the Superior Court plainly erred in utilizing the "harmless" error standard, rather than the higher *Strickland/Pierce* "prejudice" standard, which required Appellee to show that his trial counsel's conduct had an actual adverse effect on the outcome of the proceedings. *Gribble, supra.* In point of fact, "this Court has applied the *Strickland/Pierce* ineffectiveness measurement for assessing prejudice in reviewing claims of counsel ineffectiveness relating to the introduction of references to the defendant's silence, weighing the precise nature of the reference against the strength of the evidence on the point at issue." *Spotz I,* 582 Pa. at 227, 870 A.2d at 834 (citations omitted).

Viewing the prejudice question under the appropriate standard, as we indicated in *Spotz I,* as to the precise nature of the reference in this case "the evidentiary result of the prosecutor's exchange with [A]ppellee did not reveal that [A]ppellee was silent in the face of a post-arrest police accusation, thereby implying a tacit admission of guilt; but instead, [A]ppellee testified that police did not even attempt to question him, and, indeed, threatened him." *Spotz I,* 582 Pa. at 229, 870 A.2d at 835 (footnote omitted). There was no direct evidentiary link in this brief exchange between Appellee's post-arrest silence and an inference of guilt arising from that silence. *Commonwealth v. Whitney,* 550 Pa. 618, 708 A.2d 471 (1998); *Commonwealth v. Crews,* 536 Pa. 508, 640 A.2d 395 (1994). "In short, the context was not one in which jurors would equate invocation of Fifth Amendment rights with an implicit admission of guilt." *Crews,* 536 Pa. at 528, 640 A.2d at 405. Moreover, any reference to silence was limited to its context and was aimed at refuting Appellee's claim of self-defense by implying that his flight and other post-incident conduct was inconsistent with such a claim. *See Commonwealth v. Housman,* 604 Pa. 596, 986 A.2d 822 (2009), *cert. denied,* —— U.S. ——, 131 S.Ct. 199, 178 L.Ed.2d 120 (2010) (indicating flight may constitute circumstantial evidence of consciousness of guilt). During the challenged cross-examination, the prosecutor made the point that Appellee had ample opportunity before he was arrested to come forward and offer

his claim of self-defense; however, he did not do so. It was only the prosecutor's further reference to whether Appellee "ever" talked to the police that encompassed the post-arrest period. *See Spotz I, supra.* Therefore, even assuming Appellee's trial counsel objected to the challenged portions of the prosecutor's cross-examination of Appellee at trial, the overall effect on the trial would have been minimal since it would have only narrowed the point without eliminating the reference to Appellee's post-crime conduct.

As to the strength of the evidence on this point, numerous Commonwealth witnesses, including Dustin's fiancée's teenage son, Dustin's fiancée, Appellee's stepfather, and Christine Noland, gave detailed, eye-witness testimony establishing Appellee's culpability as to voluntary manslaughter, and related crimes, in the shooting of Dustin and, more specifically, disproving his claim of self-defense. In fact, during his trial testimony, Appellee admitted that, after Dustin stabbed him with a butter knife, he left Dustin in the kitchen, went upstairs, retrieved his gun, returned to the kitchen, confronted Dustin, told his stepfather to "get out of the way," and shot Dustin. N.T., Trial, 9/25/1995, 75–81. Therefore, as the Superior Court panel noted: "The evidence clearly showed that [Appellee] disengaged from the confrontation and then returned. In order to obtain the benefit of self-defense, the actor must be free from fault in provoking or continuing the difficulty which resulted in the injuries." *Spotz,* No. 770 WDA 2010, *slip op.* at 14 n. 13 (citation and emphasis omitted).[16] Thus, we disagree with the Superior

16. To prevail on a justification defense, the defendant must show (1) he reasonably believed he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force against the victim to prevent such harm; (2) he was free from fault in provoking the difficulty; and (3) he did not violate any duty to retreat. *Commonwealth v. Sepulveda,* 618 Pa. 262, 55 A.3d 1108, 1124 (2012). Moreover, the Commonwealth sustains its burden of disproving self-defense if it proves any of the following: "that the slayer was not free from fault in provoking or continuing the difficulty which resulted in the slaying; that the slayer did not reasonably believe that [he] was in imminent danger of death or great bodily harm, and that it was necessary to kill in order to save [him]self therefrom; or that the slayer violated a duty

Court that the challenged references made in the prosecutor's cross-examination of Appellee went to the "heart" of his self-defense claim such that he was "actually prejudiced." [17] Finally, it bears repeating that, "the verdict in this case, though not the outright acquittal [A]ppellee sought, nevertheless was favorable, as the jury acquitted [A]ppellee on the more serious counts of first and third degree murder." *Spotz I*, 582 Pa. at 229, 870 A.2d at 835. Therefore, when the precise nature of the challenged references is weighed against the overwhelming strength of the evidence on the point at issue, we find the Superior Court erred in concluding Appellee satisfied his burden of proving that trial counsel's omission had an actual adverse effect on the outcome of the proceedings such that Appellee is entitled to a new trial. *Commonwealth v. Busanet*, 618 Pa. 1, 54 A.3d 35 (2012) (where there was overwhelming evidence of guilt, outcome of the trial would not have been different had trial counsel objected to the passing reference that the defendant was "already running from the police in New York."). Thus, the Superior Court erred in granting Appellee relief under the PCRA as it relates to trial counsel's failure to object to the prosecutor's references to Appellee's post-arrest silence during the cross-examination of Appellee.

The Commonwealth's third and fourth issues are interrelated in that the issues focus on elements of Appellee's claim trial counsel was ineffective in failing to object to the trial court's jury instruction regarding justification, and in particular, the concepts of "defense of others" and "duty to retreat." [18] Spe-

to retreat or avoid the danger." *Id.* at 1124 (quotation, quotation marks, footnote omitted).

17. The Superior Court concluded the prosecutor's references to Appellee's post-arrest silence during cross-examination also prejudiced Appellee since the references implicated Appellee's claim of defense of others. However, this is based on an inaccurate factual predicate. The challenged portions of the prosecutor's cross-examination of Appellee make no mention of his claim of defense of others. N.T., Trial, 9/25/1995, at 150–152.

18. Pointing to trial counsel's testimony at the PCRA hearing that "there was some *in camera* discussions regarding some of the points for charge," N.T., PCRA Hearing, 2/13/2008, at 50, the Commonwealth argues it is unclear whether trial counsel, in fact, failed to object to the challenged justification instruction. However, the Commonwealth's

cifically, in its third issue, the Commonwealth questions whether the Superior Court erred in failing to make any determination related to the "reasonable basis" prong. In its fourth issue, the Commonwealth questions the propriety of the Superior Court's analysis as it relates to the "prejudice" prong.[19]

With regard to the *Strickland/Pierce* "reasonable basis" prong, which as stated *supra* has factual and legal elements, the Commonwealth contends the Superior Court "completely failed" to address or consider the *Strickland/Pierce* "reasonable basis" prong as it relates to trial counsel's failure to object to the challenged jury instructions. The Commonwealth suggests the Superior Court found trial counsel ineffective without making *any* determination as to whether he did or did not have a reasonable basis for his omission. By completely overlooking the "reasonable basis" prong, the

argument ignores the remainder of trial counsel's testimony on this issue in which trial counsel indicated that, if he had placed an objection off the record in front of this particular trial judge, he would have then ensured it was placed formally on the record for preservation purposes. N.T., PCRA Hearing, 2/13/2008, at 50–51. In any event, no further consideration of this particular argument is necessary since it is undisputed trial counsel did not preserve on the record any objection to the challenged portion of the trial court's justification instruction. *See* Pa.R.Crim.P. 647(B) ("No portions of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto before the judge retires to deliberate...."); Pa.R.A.P. 302(b) ("A general exception to the charge to the jury will not preserve an issue for appeal. Specific exception shall not be taken to the language or omission complained of."); *Commonwealth v. Fletcher*, 604 Pa. 493, 537 n. 37, 986 A.2d 759, 786 n. 37 (2009) (providing that where counsel's objection does not appear on record, we shall not presume an objection was lodged).

19. Aside from suggesting Appellee's trial counsel may have actually objected to the trial court's justification charge, see *supra*, the Commonwealth made no assertion of error as it relates to the Superior Court's holding that trial counsel's failure to object to the trial court's justification instruction possesses "arguable merit." In any event, assuming the claim possesses "arguable merit," for the reasons discussed *infra*, we conclude the Superior Court otherwise erred in granting Appellee relief on his ineffectiveness claim as it relates to the trial court's justification charge. *See DiNicola, supra* (indicating if one prong of the *Strickland/Pierce* test is not met then a petitioner has not met his burden of demonstrating ineffectiveness).

44

Commonwealth asserts, the Superior Court erred in granting Appellee relief on his ineffective assistance of counsel claim.

In response, Appellee initially argues the Commonwealth has mistakenly failed to recognize the Superior Court did, in fact, review and make a determination that Appellee's trial counsel had no "reasonable basis" for his inaction. That is, in discussing counsel's deficiency with regard to the jury instruction, the Superior Court specifically held "there is no evidence indicating trial counsel had a reasonable basis for failing to raise a timely objection[.]" *Spotz*, No. 770 WDA 2010, *slip op.* at 17. Additionally, Appellee argues the Superior Court's holding is supported by the record in that Appellee's trial counsel testified during the PCRA hearing that he "missed" the trial court's instruction to the jury as it related to Appellee's duty to retreat in defense of others.

We conclude the Commonwealth is mistaken in its assertion that the Superior Court failed to make *any* determination as to whether Appellee's trial counsel had a reasonable basis for failing to object to the trial court's justification charge. In point of fact, a clear reading of the Superior Court's decision reveals that, after the Superior Court held the particular ineffectiveness claim possessed "arguable merit," the Superior Court concluded "there is no evidence indicating trial counsel had a reasonable basis for failing to raise a timely objection[.]" *Spotz*, No. 770 WDA 2010, *slip op.* at 17.

The question of whether the Superior Court's legal conclusion is supported by the record is more problematic. The PCRA court failed to address specifically the "reasonable basis" prong as to this particular ineffectiveness issue. Therefore, the PCRA court made no credibility determinations or factual findings as it relates to whether Appellee's trial counsel had a "reasonable basis" for failing to object to the justification charge. The Superior Court seemingly overlooked the fact the PCRA court made no express credibility determinations or factual findings as to the "reasonable basis" prong for this particular ineffectiveness claim, and instead, the Superior Court summarily concluded there was no evidence of record supporting a finding of "reasonable basis."

█ Our role under the PCRA is one of limited appellate review. *Commonwealth v. Johnson*, 600 Pa. 329, 345, 966 A.2d 523, 532 (2009) ("Our standard of review in PCRA appeals is limited to determining whether the findings of the PCRA court are supported by the record and free from legal error."). In fulfilling this role, as indicated *supra*, we must defer to the PCRA court's findings of fact and credibility determinations, which are supported by the record. *Johnson*, 600 Pa. at 345, 966 A.2d at 532 ("The findings of a post-conviction court, which hears evidence and passes on the credibility of witnesses, should be given great deference.") (quotation and quotation marks omitted). The PCRA court, and not the appellate courts, has personally observed the demeanor of the witnesses, and as we indicated in *Johnson*, when a PCRA hearing is held, "we expect the PCRA court to make necessary credibility determinations." *Id.* at 358, 966 A.2d at 539. *See Commonwealth v. Basemore*, 560 Pa. 258, 293–94, 744 A.2d 717, 737 (2000) (offering that particularized assessment of the credibility of testimony is essential to resolution of ineffectiveness claims and that such assessment "is most appropriately accomplished, in the first instance, by the finder of fact"). Indeed, when a PCRA court has failed to make necessary credibility determinations, we have not hesitated to remand for such findings. *See, e.g., Johnson, supra* (remanding for credibility determinations related to guilt phase claims); *Basemore, supra* (remanding for credibility determinations related to penalty phase claims). However, remanding for the PCRA court to make factual findings and credibility determinations as to the "reasonable basis" prong will be unnecessary if we determine there is no reasonable probability that an objection to the challenged jury instruction at trial would have led to a more favorable outcome for Appellee. *See e.g., Commonwealth v. Bethea*, 574 Pa. 100, 828 A.2d 1066 (2003), *cert. denied*, 540 U.S. 1118, 124 S.Ct. 1065, 157 L.Ed.2d 911 (2004) (remand for reasonable basis hearing unnecessary where it is clear the appellee failed to show prejudice); *Commonwealth v. Daniels*, 600 Pa. 1, 963 A.2d 409 (2009) (offering the reviewing court need not determine the propriety of every prong of the *Strickland/Pierce* test where

one prong is not met). Absent a showing of such prejudice, the claim of ineffectiveness fails, regardless of whether counsel lacked a "reasonable basis." *See Spotz I, supra.*

 With regard to the *Strickland/Pierce* "prejudice" prong, the Commonwealth contends the Superior Court erred in concluding Appellee met his burden. *See Ali, supra.* Specifically, the Commonwealth contends the Superior Court summarily found Appellee met the prejudice prong, without sufficient analysis thereof. In fact, the Commonwealth contends, the sum and substance of the Superior Court's analysis of the "prejudice prong" is its holding that "[w]hile there was evidence a jury could rely on to reject the defense of others, that evidence is not so overwhelming to render the errors harmless." *Spotz,* No. 770 WDA 2010, *slip op.* at 17. The Commonwealth maintains, as it did in its second issue *supra,* the Superior Court applied an incorrect "harmless error" standard, and moreover, when the appropriate "actual prejudice" *Strickland/Pierce* standard is utilized, the totality of the evidence reveals the outcome of Appellee's trial would not have been more favorable to him had his trial counsel objected to the trial court's justification charge as it related to Appellee's duty to retreat in defense of others. *See Ali, supra.* Summarizing the testimony and evidence, the Commonwealth submits that, even if the jury was instructed that Appellee's duty to retreat was "directly equal" to his mother's and stepfather's duty to retreat, there is a reasonable probability the jury would still have convicted Appellee of voluntary manslaughter as opposed to relieving him of all culpability and acquitting him of the non-firearms charges. *Gribble, supra.* That is, the Commonwealth maintains that, even if instructed in the manner suggested by Appellee, the jury would have found Appellee shot Dustin "under a sudden and intense passion resulting from a serious provocation," 18 Pa.C.S. § 2503(a)(1),[20] and

---

20. 18 Pa.C.S. § 2503 provides, in pertinent part:

**§ 2503. Voluntary manslaughter**
(a) **General rule.**—A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by:

would have rejected Appellee's claim of defense of others. Therefore, the Commonwealth asserts, Appellee did not meet his burden of proving, by a preponderance of the evidence, that he suffered "actual prejudice" as a result of the trial court's justification charge.

In response, Appellee disputes there was evidence from which the jury could have convicted him of voluntary manslaughter under Subsection 2503(a)(1), related to "heat of passion," and additionally, proffers that, but for the trial court's failure to charge the jury that Appellee's duty to retreat was "directly equal" to his mother's and stepfather's duty to retreat, the jury would have acquitted him under the theory of defense of others.

Similar to our conclusion with regard to the Commonwealth's second issue, *supra*, we conclude the Superior Court did not utilize the correct standard in analyzing whether Appellee was prejudiced by trial counsel's omission. The panel applied the lesser "harmless error" standard, rather than the more exacting "actual prejudice" test as required under *Strickland/Pierce*. *See Gribble, supra* (explaining the distinction between the "harmless error" standard and the "actual prejudice" test used in evaluating ineffective assistance of counsel claims). In point of fact, this Court has applied the *Strickland/Pierce* ineffectiveness measurement for assessing prejudice in reviewing claims of counsel ineffectiveness in the context of counsel's failure to object to presumably erroneous jury instructions. *See Commonwealth v. Koehler*, 614 Pa. 159, 36 A.3d 121 (2012) (applying *Strickland/Pierce* "actual prejudice" measurement to determine whether the PCRA petitioner was prejudiced by his trial counsel's failure to object to the court's presumably erroneous jury instruction related to the Commonwealth's burden to prove elements of first degree murder). Thus, viewing the prejudice question under the appropriate standard, to establish prejudice from trial counsel's failure to object to the challenged portion of the justifica-

(1) the individual killed[.]

\* \* \*

18 Pa.C.S. § 2503(a)(1) (bold in original).

tion charge, Appellee must show there is a reasonable probability that, but for counsel's error or omission, the result of the proceeding would have been different. *See Koehler, supra.*

■ Here, the trial court specifically charged the jury on voluntary manslaughter under Subsection 2503(a)(1), related to "heat of passion." N.T., Trial, 9/26/1995, at 54–55. Moreover, the record reveals there was overwhelming evidence presented at trial supporting the verdict of voluntary manslaughter under the theory that, at the time Appellee shot Dustin, he was acting under a sudden and intense passion resulting from serious provocation by Dustin. *See Busanet, supra* (discussing overwhelming evidence of guilt as it relates to a finding of "actual prejudice" under the *Strickland/Pierce* standard); *Hutchinson, supra* (defining "heat of passion" voluntary manslaughter under Subsection 2503(a)(1)). In fact, Appellee's own version and account of the events leading up to and during the shooting support his conviction under Subsection 2503(a)(1). N.T., Trial, 9/25/1995, at 69–85. Additionally, as indicated *supra*, there was overwhelming evidence, including Appellee's own trial testimony, establishing he was not free from fault in continuing the difficulty which resulted in the slaying of Dustin. *See Commonwealth v. French,* 531 Pa. 42, 611 A.2d 175 (1992) (indicating same rules pertaining to self-defense claim apply to defense of others claim). Therefore, in consideration of the overwhelming evidence establishing Appellee's culpability for voluntary manslaughter under Subsection 2503(a)(1), and the evidence proving Appellee was not free from fault in continuing the difficulty resulting in Dustin's death (which necessarily disproves Appellee's claim of defense of others under which he sought an outright acquittal),[21] we do not find a reasonable probability that the outcome of Appellee's trial would have been more favorable to Appellee had trial counsel objected to the trial court's instruction as it related to Appellee's duty to retreat in defense of others. Simply put, Appellee has failed to demonstrate "actual preju-

21. Since the evidence overwhelmingly establishes Appellee was not free from fault, thus disproving his claim of defense of others, we find a similar lack of "actual prejudice" as it relates to Appellee's convictions for aggravated assault and recklessly endangering another person.

dice" under *Strickland/Pierce.*[22] Thus, the Superior Court erred in granting Appellee relief under the PCRA as it relates to trial counsel's failure to object to the justification charge as set forth *supra.*

### III. *Conclusion*

We conclude the Superior Court erred in vacating Appellee's judgment of sentence and awarding him a new trial pursuant to the dictates of the PCRA due to trial counsel's ineffectiveness. Specifically, we find Appellee did not meet his burden of proving, by a preponderance of the evidence, all of the prongs necessary under *Strickland/Pierce* as it relates to trial counsel's failure to object to the prosecutor's references to Appellee's post-arrest silence during the cross-examination of Appellee or the challenged portions of the trial court's justification charge. Accordingly, we reverse the order of the Superior Court and remand to that court for consideration of Appellee's PCRA issues that remain in abeyance. Jurisdiction relinquished.

Justice EAKIN did not participate in the consideration or decision of this case.

Chief Justice CASTILLE and Justices BAER, TODD and McCAFFERY join the opinion.

Justice SAYLOR concurs in the result.

22. Appellee argues the Superior Court properly suggested trial counsel's failure to object to the prosecutor's improper comments on his post-arrest silence, combined with the trial court's defective justification instruction, resulted in "actual prejudice." We have often held that "no number of failed [ ] claims may collectively warrant relief if they fail to do so individually." *Johnson, supra,* at 532 (quotation omitted). However, we have clarified that this principle applies to claims that fail because of lack of merit or arguable merit. *Commonwealth v. Sattazahn,* 597 Pa. 648, 952 A.2d 640, 671 (2008), *cert. denied,* 556 U.S. 1283, 129 S.Ct. 2765, 174 L.Ed.2d 273 (2009). When the failure of individual claims is grounded in lack of prejudice, then the cumulative prejudice from those individual claims may properly be assessed. *Id.* We are satisfied there is no cumulative prejudice warranting relief. The ineffectiveness claims at issue are independent factually and legally, with no reasonable and logical connection warranting a conclusion that the cumulative effect was of such moment as to establish actual prejudice.