J-S49033-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JOSE A. COLON, | |
| Appellant | No. 3756 EDA 2015 |

Appeal from the PCRA Order November 17, 2015
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0000850-2013

BEFORE:  PANELLA, J., OLSON, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED JUNE 13, 2016**

Appellant Jose A. Colon appeals from the order entered in the Court of Common Pleas of Delaware County (PCRA court) on November 17, 2015, dismissing his first petition filed pursuant to the Post Conviction Relief Act ("PCRA"). [1]   Following a review of the record, we affirm.

The PCRA court made the following, relevant findings of fact following its independent review of Appellant's *pro se* and counselled PCRA petitions, the Commonwealth's response thereto, and hearings held thereon on July 17, 2015, and August 15, 2015:

> 1.    [Appellant] was taken into custody by members of the Pennsylvania State Police (PSP) on July 16, 2009 after State

---

[1] 42 Pa.C.S.A. §§ 9541-46.

*Former Justice specially assigned to the Superior Court.

Troopers witnessed him deliver a large quantity of methamphetamine to another. N.T. 7/17/15, pp. 25-26.

2. [Appellant] was transported back to the PSP Media barracks and interviewed by PSP Troopers Skahill and Miscannon. N.T. 7/17/15, p. 26. During the interview, [Appellant] was given an opportunity to cooperate with investigators in return for future judicial consideration in order to further their investigation into the source of the large amount of methamphetamine. N.T. 7/17/15, p. 27. With [Appellant's] cooperation, the investigation had the potential to reach a national scale involving persons from Pennsylvania to California. N.T. 7/17/15, pp. 27-28.

3. No charges were filed against [Appellant] on July 16, 2009 and he was released from custody in order to facilitate his cooperation and further the police investigation. N.T. 7/17/15, pp. 29. [Appellant] was informed that he would be charged with delivering a controlled substance at a later date. Id. Trooper Miscannon and [Appellant] exchanged cellular telephone numbers with the understanding that Trooper Miscannon would follow up with [Appellant] with respect to cooperation with the investigation. N.T. 7/17/15, pp. 29-30.

4. In the months following July 16, 2009, Trooper Miscannon attempted on numerous occasions to contact [Appellant] via cellular phone. N.T. 7/17/15, pp. 30. Although Trooper Miscannon spoke to [Appellant] several times over the phone, he was unable to establish a face to face meeting with him. Id. After a period of time, the cellular telephone number provided to Trooper Miscannon by [Appellant] was taken out of service. Id. Miscannon also went to [Appellant's] last known address "a couple times" in order to make contact with him. Id. This too was unsuccessful. N.T., 7/17/15, pp. 31.

5. On March 16, 2012 Trooper Miscannon filed a criminal complaint and affidavit of probable cause charging [Appellant] with delivery of a controlled substance and related offenses. Id. On the same date, a warrant was issued for [Appellant's] arrest. Id. On or about the same date, Trooper Miscannon entered the warrant into the National Crime Information Center (NCIC) database. N.T. 7/17/15, pp. 31; 38.

6.     On or about March 23, 2012 Trooper Miscannon and other members of the Pennsylvania State Police went to 3434 F Street in Philadelphia, [Appellant's] last known address, in an attempt to locate and arrest him.   N.T. 7/17/15, pp. 31.   While conducting surveillance on that address, Trooper Miscannon recognized a woman whom he knew to have a past relationship with [Appellant]. Id. Trooper Miscannon made contact with this woman who indicated that she had not seen [Appellant] in a long time and had heard he moved to Ft. Lauderdale, Florida.   N.T. 7/17/15, pp. 31[-]32.   She also provided Trooper Miscannon with a cellular telephone number she claimed belonged to [Appellant].  N.T. 7/17/15, pp. 32.

7.     Trooper Miscannon continued to search for [Appellant]. In the proceeding weeks he ran several Pennsylvania Criminal Intelligence Center reports for [Appellant]. N.T. 7/17/15, pp. 34. He also searched for subscriber information for the cellular telephone number provided to him.  N.T. 7/17/15, pp. 33.  None of his subsequent investigation generated further credible information as to the specific whereabouts of Petitioner.   N.T. 7/17/15, pp. 35.

8.     On or about December 28, 2012, Trooper Miscannon was contacted by Detective Kevin Hancock of the Light House Point Police Department in Florida.    N.T. 7/17/15, pp. 35.    Det. Hancock informed Trooper Miscannon that they had Petitioner in custody for a separate investigation, but had become aware of Trooper Miscannon's warrant through NCIC.  N.T. 7/17/15, pp. 35-36.  Trooper Miscannon immediately contacted the Delaware County District Attorney's Office to arrange for extradition of Petitioner.    Id. [Appellant] was thereafter extradited and transported back to Pennsylvania on February 1, 2013.

9.     On or about June 14, 2013, Daniel Pallen, Esquire entered his appearance on behalf of [Appellant].  N.T. 7/17/15, pp. 43. Attorney Pallen requested and was provided full discovery by the Delaware County District Attorney's Office.   N.T. 7/17/15, pp. 44. Among the discovery items was a fugitive notice completed by Trooper Miscannon and filed with the district court   N.T. 7/17/15, pp. 45; Commonwealth PCRA Exhibit 43.

10.    Attorney Pallen met with [Appellant] at least two but not more than four times prior to July 10, 2013.  N.T. 7/17/15, pp.

46. During one or more of these meetings, Attorney Pallen specifically discussed with [Appellant] his speedy trial rights under Pa.R.Crim.P. 600. N.T. 7/17/15, pp. 46-47; 53. At no time during his meetings with [Appellant] did [Appellant] indicate a desire to file or litigate a motion to dismiss under Rule 600. N.T. 7/17/15, pp. 48. Attorney Pallen did not file a motion to dismiss under Rule 600 because based on his review of discovery, specifically the fugitive notice, such a motion lacked merit. N.T. 7/17/15, pp. 48-49; 54.

\*\*\*

PCRA Court's Order Denying [Appellant's] PCRA Petition After Hearing, filed 11/17/15, at 1-4.

On July 10, 2013, Appellant entered a negotiated guilty plea to Possession with Intent to Deliver a Controlled Substance.[2] Appellant was sentenced on September 13, 2013, to a term of 96 months to 192 months in prison. Thereafter, he filed a Motion for Reconsideration of Sentence which the trial court granted. The trial court resentenced Appellant on October 24, 2013, to a term of incarceration of 72 months to 144 months. Appellant did not file a direct appeal.

On November 15, 2014, Appellant filed a timely PCRA petition, *pro se*. Counsel was appointed and filed an amended petition on March 6, 2015. Following hearings thereon, the PCRA court denied relief on November 17, 2015. Appellant filed a timely notice of appeal with this Court on December 14, 2015. The PCRA court ordered Appellant to file a concise statement of

_____

[2] 35 P.S. § 780-113(A)(30).

- 4 -

errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant timely complied. The PCRA court issued an opinion in accordance with Pa.R.A.P. 1925(a) on February 16, 2016, wherein it found Appellant had waived his derivative claim counsel had been ineffective for failing to raise a Rule 600 objection when he entered his guilty plea.

In his brief, Appellant presents the following issue for our review:

> Was the trial court in error in denying [Appellant's] petition for post conviction relief alleging that trial counsel was ineffective for failing to file and litigate a motion to dismiss pursuant to Pa.R.Crim.P. Rule 1100? [3]

Brief for Appellant at 4.

Our well-settled standard of review is as follows: "In reviewing the denial of PCRA relief, we examine whether the PCRA court's determination is supported by the record and free of legal error." *Commonwealth v. Fears*, 624 Pa. 446, 460, 86 A.3d 795, 803 (2014) (internal quotation marks and

---

[3] Appellant interchangeably refers to "Rule 1100" and to "Rule 600;" however, effective April 1, 2001, Pa.R.Crim.P. 1100 was amended and renumbered as Pa.R.Crim.P. 600. As such, the language of Rule 1100 is now Rule 600 and despite being amended several times, the relevant language under both versions of the rule is substantially the same. *Commonwealth v. Brock*, 619 Pa. 278, 285-86, 61 A.3d 1015, 1019 (2013). In addition, effective July 1, 2013, the Supreme Court adopted a new Rule 600 that reflects prevailing case law. *See* Pa.R.Crim.P. 600, Comment. However, inasmuch as the Commonwealth filed the criminal complaint in this case prior to the effective date of the revisions, the former rule guides our review. *Brock*, 619 Pa. at 281 n. 2, 61 A.3d at 1016 n.2. Therefore, all references in this decision are to former Rule 600.

citation omitted). "The scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level." **Commonwealth v. Spotz**, 624 Pa. 4, 33, 84 A.3d 294, 311 (2014) (citation omitted). "It is well-settled that a PCRA court's credibility determinations are binding upon an appellate court so long as they are supported by the record." **Commonwealth v. Robinson**, 623 Pa. 345, 370, 82 A.3d 998, 1013 (2013) (citation omitted). However, this Court reviews the PCRA court's legal conclusions *de novo.* **Commonwealth v. Rigg**, 84 A.3d 1080, 1084 (Pa.Super. 2014) (citation omitted).

We further note that counsel is presumed effective, and an appellant bears the burden of proving otherwise. **Fears**, 624 Pa. at 460, 86 A.3d at 804. As such, to prevail on any claim of ineffective assistance of counsel, a PCRA petitioner must allege and prove "(1) the underlying legal claim was of arguable merit; (2) counsel had no reasonable strategic basis for his action or inaction; and (3) the petitioner was prejudiced—that is, but for counsel's deficient stewardship, there is a reasonable likelihood the outcome of the proceedings would have been different." **Commonwealth v. Simpson**, 620 Pa. 60, 72, 66 A.3d 253, 260 (2013) *citing* **Commonwealth v. Pierce**, 567

Pa. 186, 203, 786 A.2d 203, 213 (2001).[4] A claim of ineffectiveness fails if the petitioner fails to prove any of these prongs. *Id*.

Although he couches his issue for this Court's review in terms of trial counsel's ineffectiveness, in his two and one-half page argument, Appellant generally maintains that police knew he was in Florida and did not exercise due diligence in ensuring he was brought back to this Commonwealth when a warrant was issued on March 16, 2012. Brief for Appellant at 9-11. In doing so, Appellant does not even attempt to establish a valid Rule 600 claim. In addition, the entirety of Appellant's argument regarding trial counsel's ineffectiveness is comprised of only one sentence: "Accordingly, it is argued that Trial Counsel should have filed and litigated a Motion to Dismiss pursuant to failure to comply with Rule 1110." Brief for Appellant at 11. Clearly, Appellant has failed to address the three prongs of the *Pierce* test for ineffectiveness analysis. Accordingly, Appellant's claim is waived for lack of development. *See Commonwealth v. Charleston*, 94 A.3d 1012, 1025 (Pa.Super. 2014), *reargument denied*, (Aug. 7, 2014), *appeal denied*, 628 Pa. 636, 104 A.3d 523 (2014).

Moreover, Appellant's claim would not merit relief, for he fails to acknowledge that "[a] plea of guilty effectively waives all nonjurisdictional defects and defenses." *Commonwealth v. Gibson*, 561 A.2d 1240, 1242

---

[4] This well-settled, three-pronged test is commonly referred to as the "*Pierce* test."

(Pa.Super. 1989), *appeal denied*, 525 Pa. 642, 581 A.2d 568 (1990). A defendant who pleads guilty cannot successfully raise a Rule 600 challenge unless he can show that the Rule 600 violation affected the voluntariness of the plea itself. *Id*. Where an underlying claim was waived by a guilty plea, a derivative claim of ineffective assistance of counsel must necessarily fail. **Commonwealth v. Bauer**, 604 A.2d 1098 (Pa.Super. 1992).

Significantly, as the PCRA notes, Appellant failed to raise a Rule 600 claim at any time before the trial court, and he never moved to withdraw his negotiated guilty plea. In addition, Appellant has not claimed his plea was coerced by the alleged deprivation of his speedy trial rights. Indeed, Appellant indicated he understood that by pleading guilty he was "giving up all of the rights contained in the Guilty Plea Statement except for [his] limited right to appeal to a higher Court, and file Motions to change the sentence [the trial court] may impose, and withdraw [his] plea[.]" **See** N.T., 7/10/13, at 15. Appellant did not pursue a direct appeal; therefore, Appellant's guilty plea provides an additional basis for waiver of an ineffective assistance of counsel challenge. **See Gibson**, *supra*.

Therefore, we affirm the denial of Appellant's PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esc.
Prothonotary


Date: <u>6/13/2016</u>