J-S20024-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KHALIL HENDERSON | |
| Appellant | No. 997 EDA 2019 |

Appeal from the PCRA Order Entered March 1, 2019
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0007858-2016

BEFORE: SHOGAN, STABILE, and McLAUGHLIN, JJ .

MEMORANDUM BY STABILE, J.:                    **FILED OCTOBER 15, 2020**

Appellant, Khalil Henderson, appeals from the March 1, 2019 order dismissing his petition pursuant to the Post Conviction Relief Act ("PCRA") 42 Pa.C.S.A. §§ 9541-46. We affirm.

The pertinent underlying facts are as follows:

On December 5, 2015, at approximately 7:30 p.m., in the area of C and Somerset Streets in Philadelphia … there was a fight between two females, one named Marguerita Gonzalez and another female. As the two women fought, a crowed surrounded them … [including the Petitioner] and [the decedent, Najee Rivera.] During the fight, [the Petitioner] struck Gonzalez in the face, knocking her to the ground. [The decedent] approached the [Petitioner] and said something to the effect of 'why did you hit her.' An altercation ensued and the [Petitioner] produced a 9-millimeter handgun from his jacket and shot [the decedent] once in the stomach. The crowd dispersed and the [Petitioner] fled the scene.

At the time that this happened, Police Officers William Nagey, Shannon Dill and Brian Smith were in patrol uniform but in an unmarked vehicle driving down "C" Street right at Somerset.

When those officers got to the intersection, they heard the gunshot and saw the crowd dispersing. [The decedent] was carried over to the police officers. A patrol car … drove [the decedent] to Temple Hospital.

At Temple Hospital, [the decedent] fell into a coma. He was treated for a gunshot wound to the abdomen and ultimately succumbed to his injuries on December 20, 2015. The body was taken to the Medical Examiners' Officer, and he was examined by Dr. Albert Chu, who determined the immediate cause of death to be complications of a gunshot wound to the abdomen, and the manner of death [was] homicide.

At that time, police officers began an investigation for a shooting that later turned into a homicide. [Detective Brian Peters] interviewed multiple witnesses … Amongst these witnesses, four identified the [Petitioner] as the shooter. They described the incident between the two females in the fight and the [Petitioner] striking Gonzalez in the face. They identified the [Petitioner] by either knowing him or through a series of photographs in the photo array.

Ultimately, an arrest warrant was issued for the [Petitioner] on March 25, 2016. At the crime scene, [police officers] recovered one 9-millimeter fired cartridge casing. Recovered from the body of [the decedent] was one bullet fragment consistent with a 9-millimeter handgun. No murder weapon was recovered.

After the arrest warrant was issued, the [Petitioner] left the area. The case was referred to the fugitive squad. … Eventually they located the [Petitioner] as he was riding in a car that belonged to a woman named Keneisha Wright-Carter. That vehicle was driving southbound on 76. The vehicle turned onto the Boulevard and was stopped at Fox Street. … The [Petitioner] was identified and arrested pursuant to the arrest warrant.

PCRA Court Opinion, 5/28/19, at 2-3.

Police arrested Appellant and charged him with murder and unlawful possession of a firearm at docket number 7623 of 2016, and unlawful

possession of a firearm[1] in the instant matter, docket number 7858 of 2016. On December 4, 2017, Appellant entered a negotiated guilty plea to those offenses, and the trial court imposed an aggregate 22½ to 50 years of incarceration. Appellant did not file a direct appeal. He filed this timely first PCRA petition on June 6, 2018. Appointed counsel filed an amended petition on October 18, 2018, and the PCRA court held a hearing on March 1, 2019. At the conclusion of that hearing, the PCRA court entered an order denying relief. This timely appeal followed.

We observe that Appellant has filed this appeal at docket number 7858 of 2016, relating to a § 6105 charge. The PCRA court, citing **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018), recommends that we quash this appeal because it filed separate orders to each of the two docket numbers denying relief, yet only a single notice of appeal was filed to docket number 7858 of 2016. In other words, it is the trial court's opinion that Appellant had to file two notices of appeal. We disagree. **Walker** held, prospectively, that "where a single order resolves issues arising on more than one docket, separate notices of appeal must be filed for each case." **Id.** at 971. It was the co-mingling of multiple dockets under a single notice of appeal that our Supreme Court felt impeded proper appellate review. Implicit in **Walker's** bright-line rule is the assumption that an appellant desires to appeal issues relating to

---

[1] 18 Pa.C.S.A. § 6105.

more than one docket under a single notice of appeal. The Commonwealth in *Walker* attempted to file a single notice of appeal relating to four separate dockets. *Walker*, however, is not violated where an appellant choses to appeal from less than all dockets resolved under separate orders and files separate notices only to those dockets relevant to the judgments sought to be reviewed. This does not impede appellate review and is consistent with our earlier case law that holds that our appellate jurisdiction is limited to reviewing a judgment of sentence only under the docket number identified by a notice of appeal and to no others. *See Commonwealth v. Hardy*, 99 A.3d 577 (Pa. Super. 2014), citing cases.[2] Instantly, the record contains an order denying relief at number 7858 of 2016. The PCRA court also entered a separate order denying relief at docket number 7623. Appellant filed a notice of appeal only to the order disposing of the petition raising issues as to docket number 7858 of 2016. This appeal did not arise from a single order pertaining to multiple docket numbers. *Walker* therefore, is not applicable. The Commonwealth candidly acknowledges the inapplicability of *Walker* in its brief. Commonwealth's Brief at 5 n.1. Our jurisdiction accordingly, is limited to

_____

[2] *Hardy* was a pre-*Walker* decision issued at a time when we considered we had jurisdiction to review multiple dockets under a single notice of appeal. *Walker* no longer allows that practice, but instead requires separate appeal notices for each docket sought to be reviewed. The holding in *Hardy* that our appellate jurisdiction only pertains to the judgment under the docket identified in a notice of appeal remains valid, is consistent with *Walker*, and properly vests this Court with jurisdiction to entertain an appeal.

- 4 -

review of Appellant's petition respecting his guilty plea to the charge at docket number 7858 of 2016. We now turn to the merits.

Appellant claims his guilty plea was not valid, given that plea counsel was ineffective for failing to present evidence of Appellant's mental health problems to the trial court. The PCRA court found otherwise, noting that the trial court discussed Appellant's mental health history with him during the guilty plea hearing and concluded that Appellant understood the proceeding. Trial Court Opinion, 5/23/19, at 7-8. Moreover, Appellant testified that he had not undergone any mental health treatment since he was sixteen years old. N.T. Guilty Plea, 12/4/17, at 16-17. Appellant, born on August 14, 1993, was 24 years old at the time of the guilty plea and sentencing hearing.

We conduct our review according to the following standard:

> In reviewing the denial of PCRA relief, we examine whether the PCRA court's determinations are supported by the record and are free of legal error. The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions.

***Commonwealth v. Watkins***, 108 A.3d 692, 701 (Pa. 2014)(citations omitted), ***cert. denied***, 136 S.Ct. 221 (2015). Counsel is presumed effective, and a PCRA petitioner bears the burden of pleading and proving otherwise. ***Commonwealth v. Spotz***, 84 A.3d 294, 311 (Pa. 2014). To do so, the petitioner must show that "(1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the

petitioner suffered actual prejudice as a result." *Id.* Failure to prove any of these three prongs is fatal to the claim. *Id.*

> It is clear that a criminal defendant's right to effective counsel extends to the plea process, as well as during trial. However, [a]llegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea. Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases.

> [T]he law does not require that [the defendant] be pleased with the outcome of his decision to enter a plea of guilty: All that is required is that [his] decision to plead guilty be knowingly, voluntarily, and intelligently made.

*Commonwealth v. Willis*, 68 A.3d 997 (Pa. Super. 2013).

Instantly, the record reflects that plea counsel informed the trial court of Appellant's prior mental health issues. Appellant informed the trial court that his treatment for mental health issues had ceased years prior to the plea, and Appellant stated that he understood the proceeding. Moreover, Appellant reviewed and signed a written plea colloquy, and the trial court conducted a thorough oral colloquy before accepting Appellant's plea. The trial court therefore accepted the plea and proceeded to sentencing. We have reviewed the PCRA court's opinion, the record, the parties' briefs, and the applicable law. We conclude that the PCRA court accurately addresses and disposes of the merits of Appellant's argument. We therefore affirm the PCRA court's order for the reasons explained in the PCRA court's May 28, 2019 opinion.

Order affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 10/15/2020*

**IN THE COURT OF COMMON PLEAS**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**CRIMINAL TRIAL DIVISION**

COMMONWEALTH OF PENNSYLVANIA     :   CP-51-CR-0007858-2016
                                                       :
                                                      :

v.                                                     :
                                                      :

KHALIL HENDERSON                          :
                                                      :

## OPINION

**McDermott, J.**                                                      **May 28, 2019**

### Procedural History

On April 22, 2016, the Petitioner, Khalil Henderson, was arrested and charged with Murder and related offenses in CP-51-CR-0007623-2016, and Possession of a Firearm by a Prohibited Person ("VUFA 6105") and related offenses in CP-51-CR-0007858-2016. On December 4, 2017, the Petitioner appeared before this Court and entered into a negotiated guilty plea to Third-Degree Murder and VUFA 6105 in CP-51-CR-0007623-2016 and VUFA 6105 in CP-51-CR-0007858-2016.[1] On that same date, this Court imposed the negotiated sentence of twenty to forty years of imprisonment for Third-Degree Murder, and consecutive sentences of one and one-half to five years of imprisonment and one to five years of imprisonment on each respective VUFA 6105 charge, for a total sentence of twenty-two and one-half to fifty years of imprisonment. The Petitioner did not file a post-sentence motion or a Notice of Appeal.

On June 6, 2018, the Petitioner filed a timely Post-Conviction Relief Act ("PCRA") petition, his first. On October 18, 2018, appointed PCRA counsel filed an Amended Petition.

---

[1] The remaining charges were *nolle prossed.*

1

On March 1, 2019, after conducting an evidentiary hearing, this Court dismissed the instant petition. On March 29, 2019, the Petitioner timely filed a Notice of Appeal.

## Guilty Plea Hearing Facts

At the December 4, 2017 guilty plea hearing, the Commonwealth summarized the following agreed upon facts:

> On December 5, 2015, at approximately 7:30 pm, in the area of C and Somerset Streets in Philadelphia ... there was a fight between two females, one named Marguerita Gonzalez and another female. As the two women fought, a crowd surrounded them ... [including the Petitioner] and [the decedent, Najee Rivera.] During the fight, [the Petitioner] struck Gonzalez in the face, knocking her to the ground. [The decedent] approached the [Petitioner] and said something to the effect of "why did you hit her." An altercation ensued and the [Petitioner] produced a 9-millimeter handgun from his jacket and shot [the decedent] once in the stomach. The crowd dispersed and the [Petitioner] fled the scene.
>
> At the time that this happened, Police Officers William Nagey, Shannon Dill and Brian Smith were in patrol uniform but in an unmarked vehicle driving down "C" Street right at Somerset. When those officers got to the intersection, they heard the gunshot and saw the crowd dispersing. [The decedent] was carried over to the police officers. A patrol car ... drove [the decedent] to Temple Hospital.
>
> At Temple Hospital, [the decedent] fell into a coma. He was treated for a gunshot wound to the abdomen and ultimately succumbed to his injuries on December 20, 2015. The body was taken to the Medical Examiners' Officer, and he was examined by Dr. Albert Chu, who determined the immediate cause of death to be complications of a gunshot wound to the abdomen, and the manner of death [was] homicide.
>
> At that time, police officers began an investigation for a shooting that later turned into a homicide. [Detective Brian Peters] interviewed multiple witnesses ... Amongst these witnesses, four identified the [Petitioner] as the shooter. They described the incident between the two females in the fight and the [Petitioner] striking Gonzalez in the face. They identified the [Petitioner] by either knowing him or through a series of photographs in the photo array.
>
> Ultimately, an arrest warrant was issued for the [Petitioner] on March 25, 2016. At the crime scene, [police officers] recovered one 9-millimeter fired cartridge casing. Recovered from the body of [the decedent] was one bullet fragment consistent with a 9-millimeter handgun. No murder weapon was recovered.

2

After the arrest warrant was issued, the [Petitioner] left the area. The case was referred to the fugitive squad. ... Eventually they located the [Petitioner] as he was riding in a car that belonged to a woman named Keneisha Wright-Carter. That vehicle was driving southbound on 76. The vehicle turned onto the Boulevard and was stopped at Fox Street. ... The [Petitioner] was identified and arrested pursuant to the arrest warrant.

Wright-Carter gave consent for the officers to search the car and gave a statement indicating that the [Petitioner] had placed an item of interest in the trunk of the car. Recovered from the trunk of the car was one 9-millimeter Kel-Tec handgun loaded with an extended magazine that held 27 rounds. It was fully loaded. That weapon was submitted to ballistics and the firearms identification unit. Police Office Lawrence Flagler ... determined that the handgun was not the murder weapon.

Also recovered from the [Petitioner] was his cell phone. Police Detective Thurston Lucke examined the cell phone. Recovered inside the cell phone were photographs, including multiple photographs of the [Petitioner] holding two handguns. One was the same Kel-Tec 9-millimeter with the extended magazine that was recovered and another handgun consistent with a 9-millimeter that was never recovered. These photographs depict the [petitioner] holding both of those weapons at various points and then holding them each individually.

N.T. 12/4/2017 at 23–27.

Before entering into the negotiated guilty plea, the Petitioner indicated to this Court that he was diagnosed with bipolar disorder and ADHD when he was seven years old. The Petitioner took medication for his mental health issues, but stopped treatment when he was sixteen years old. *Id.* at 15–17.

## PCRA Evidentiary Hearing Facts

In preparation for trial, trial counsel, Jonathan Altschuler, Esq., visited the Petitioner in prison on several occasions and reviewed evidence with him. Trial counsel also discussed plea options with the Petitioner, including the important rights the Petitioner would be giving up if he chose to plead guilty, as well as the specific charges, mandatory minimum sentences, and the statutory maximum sentences that could be imposed.

3

On December 4, 2017, the day this case was listed to begin trial, this Court permitted the Petitioner's brother to spend time with the Petitioner and trial counsel so that the Petitioner could consult with his brother about his decision to plead guilty.[2] Trial counsel reviewed and completed the guilty plea colloquy form with the Petitioner. Trial counsel believed the Petitioner understood the issues as he was going over them with trial counsel, as well as his legal rights and the consequences of the plea. Trial counsel would not have permitted the Petitioner to enter into a negotiated guilty plea if he did not believe that the Petitioner understood the ramifications of entering into the plea. N.T. 3/1/2019 at 9–14.

Trial counsel did not observe any of the Petitioner's alleged mental health issues. Further, the Petitioner did not have any difficulty understanding any parts of the negotiations in the weeks leading up to his plea when trial counsel discussed all aspects of the case with him, including possible defenses. *Id.* at 24, 33.

According to the Petitioner's mother, Brenda Henderson, the Petitioner was diagnosed with ADHD, depression, and anxiety when he was seven years old. Shortly after he was diagnosed, his father passed away from a heart attack. Henderson obtained custody of the Petitioner and raised him after his father's passing. The Petitioner stopped taking his medication when he was approximately fourteen years old. After the Petitioner was arrested in this case, Henderson visited him a few times while he was in local custody in Philadelphia. Henderson was unaware that the Petitioner pled guilty. *Id.* at 37–39, 41, 48–53.

The Petitioner did not testify at the evidentiary hearing.

---

[2] The Petitioner met with his brother and trial counsel in this Court's consultation booth.

**Discussion**

Before addressing the merits of the Petitioner's claim, this Court must first address the fact that the Petitioner filed a Notice of Appeal for only one of his two underlying convictions relating to this matter. An appeal may be taken as of right from any final order of a trial court. *See* Pa.R.A.P. 341. When a single order resolves issues arising on more than one lower court docket, separate notices of appeal must be filed. *Commonwealth v. Walker*, 185 A.3d 969, 977 (Pa. 2018). Failure to do so will result in a quashal of the appeal. *Id.*

On March 1, 2019, this Court issued an order denying relief on each docket number and dismissed the Petitioner's instant PCRA petition on docket numbers CP-51-CR-0007623-2016 (Third-Degree Murder and VUFA 6105) and CP-51-CR-0007858-2016 (VUFA 6105). On March 29, 2019, the Petitioner timely filed a Notice of Appeal in CP-51-CR-0007858-2016. Because the Petitioner failed to file a separate notice of appeal for CP-51-CR-0007623-2016, this appeal must be quashed.

For the benefit of any future potential proceedings, this Court will briefly discuss the merits of the Petitioner's claim as it relates to his entire sentence. The Petitioner alleges one issue for review, alleging that his guilty plea was unknowing, unintentional, and involuntary, as a result of trial counsel's ineffectiveness. Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea. *Commonwealth v. Pier*, 182 A.3d 476, 478–79 (Pa. Super. 2018) (*citing Commonwealth v. Moser*, 921 A.2d 526, 531 (Pa. Super. 2007)). Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. *Id.*

Pleas must be taken in open court, and trial courts must conduct an on the record colloquy to ascertain whether the defendant is aware of his rights and the consequences of his plea. *Commonwealth v. Bedell*, 954 A.2d 1209, 1212 (Pa. Super. 2008). Through its colloquy, the trial court must affirmatively demonstrate that the defendant understands: (1) the nature and charges to which he pleads guilty; (2) the factual basis for the plea; (3) his right to trial by jury; (4) the presumption of his innocence; (5) the permissible ranges of sentences and fines; and, (6) that the judge is not bound by an agreement unless the defendant accepts it. Pa.R.Crim.P. 590 *Comment*. To be eligible for relief based on an unlawful inducement claim, a petitioner must plead and prove by a preponderance of the evidence that his conviction resulted from "a plea of guilty unlawfully induced where the circumstances make it likely that the inducement caused the petition to plead guilty and the petitioner is innocent." *See* 42 Pa.C.S. § 9543(a)(2)(iii).

The record reflects that the Petitioner entered into a knowing, intelligent, and voluntary guilty plea. At his guilty plea hearing, the Petitioner reviewed and signed a written guilty plea colloquy form which indicated that he understood the nature of the charges he pled guilty to, the factual basis for his plea, his right to a jury trial, the presumption of innocence, and the permissible range of sentences. By signing the colloquy form, the Petitioner indicated that he wished to enter his plea on his own volition and willingly gave up defenses to the charges and the vast majority of his appellate rights. *See* Written Guilty Plea Colloquy Form, attached as "Exhibit A."

This Court supplemented the Petitioner's written colloquy form with an extensive oral colloquy, during which this Court confirmed that the Petitioner received his high school diploma. N.T. 12/4/2017 at 15. This Court further verified that the Petitioner understood that he was giving up all of his rights to a trial. *Id.* at 19. This Court described the elements and maximum

6

penalties of each crime to the Petitioner. *Id.* at 7. Armed with this information, the Petitioner decided to accept the Commonwealth's negotiated plea. After this Court heard a summary of the facts and determined that the Commonwealth had sufficient evidence to prove the Petitioner's guilt, it accepted the Petitioner's plea based on his willingness to accept responsibility for his actions. *Id.* at 39, 41.

The Petitioner alleged that before he plead guilty, trial counsel only visited him four times at the prison. The length and frequency of the consultations between a lawyer and his client cannot alone support a finding of ineffectiveness. *Commonwealth v. Johnson*, 51 A.3d 237, 244 (Pa. Super 2012). The record is clear that this Court permitted the Petitioner additional time to speak with trial counsel in the courtroom's consultation booth prior to the guilty plea hearing on several occasions. *Id.* at 4–5, 9–12. Further, this Court allowed the Petitioner an opportunity to discuss his options with his brother before accepting the negotiated plea. *Id.* at 9.

The Petitioner claimed he was incompetent to enter a guilty plea, in that he was unable to participate in his defense because of several diagnosed but unrelated medical illnesses, such as bipolar disorder, depression and PTSD. During the guilty plea hearing, the Petitioner told this Court he was treated for bipolar disorder and ADHD, but his treatment stopped when he was sixteen years old. *Id.* at 16–17. This Court discussed the Petitioner's mental health issues with him during the guilty plea hearing, and did not believe it interfered with his decision to enter into the guilty plea. N.T. 3/1/2019 at 68. The Petitioner told this Court he did not understand "nothing [trial counsel was] talking about" in relation to his case and the guilty plea process. N.T. 12/4/2017 at 5. At that time, this Court provided the Petitioner an opportunity to gain clarity from both this Court and trial counsel. *Id.* at 5–6. Before accepting the negotiated guilty plea, this Court determined that the Petitioner was fully aware of what was happening in the courtroom

7

during the guilty plea hearing based on the questions he asked this Court and his attorney. *Id.* at 69.

The Petitioner failed to present any evidence to establish that, at the time of his guilty plea, he was suffering from any mental health issues that prevented him from understanding the nature of his plea or of the charges against him. Further, the Petitioner stopped taking his medication when he was a teenager. *Id.* at 41. This Court's determination that the Petitioner's guilty plea was knowing, voluntary, and intelligent did not change at the conclusion of the evidentiary hearing. This claim fails.

For the foregoing reasons, the judgment of this Court should be affirmed.

BY THE COURT,

Barbara A. McDermott, J

8

*Commonwealth v. Khalil Henderson,* CP-51-CR-0007858-2016

## PROOF OF SERVICE

I hereby certify that I am this day serving the foregoing filing upon the person(s), and in the manner indicated below, which service satisfies the requirements of Pa. R. Crim. P. 114:

Philadelphia District Attorney's Office
Three South Penn Square
Philadelphia, PA 19107
Attn: Lawrence Goode, Esq.

**Type of Service:** **DA's Assigned Courthouse Box**

Joseph T. Schultz, Esq.
1518 Walnut Street, Suite 808
Philadelphia, PA 19102

**Type of Service:** **First Class Mail**

Khalil Henderson, NE7152
SCI Albion
10745 Route 18
Albion, PA 16475-0001

**Type of Service:** **Certified Mail**

Dated: May 28, 2019

Stephanie Wolbransky
Judicial Clerk to the
Honorable Barbara A. McDermott

# EXHIBIT "A"

## Written Guilty Plea Colloquy

COMMONWEALTH'S EXHIBIT

2

### PERSONAL

Defendant's Name: _Khalil Henderson_

Address: _5775 Kemble Ave   Phila PA  19141_

Age: _24_ years.                     Education: Finished _12_ grades in school.

I can read and write English.

I have never seen a doctor or been in a hospital for any mental problems — I can understand what is going on.

I am not under the influence of drugs or alcohol.          I have not taken any medicine in the last week.

### THE CHARGES

I admit I committed the crime(s) of _Murder (3rd) ; & VUFA - 86105 (2 Counts)_
_____, and I want to plead guilty.

My lawyer told me what the elements of the crime(s) are that the District Attorney must prove to convict me.

I know I can go to jail for up to _50_ years and be fined $ _70,000_ for the crimes I committed.

### NO PROMISES OR THREATS

Nobody promised me anything or threatened me or forced me to plead guilty. I, myself, have decided to plead guilty. I know what I say today is final.

### PLEA BARGAIN OR AGREEMENT

There is no plea bargain or agreement of any kind.

There is no plea bargain of any kind, except that the District Attorney promised to:

Recommend a sentence of not more than _22 1/2_ to _50_ [years] [months].

Make no recommendations about my sentence.

Drop the charges of _All remaining charges_ _____

_____

Nobody else promised me anything if I plead guilty.

I know if the judge does not agree with the plea bargain or agreement, I can withdraw my guilty plea and have a trial before a judge and jury or·before a judge alone.

### RIGHTS AT TRIAL

I do not have to plead guilty, even if I committed the crimes. I have an absolute right to plead not guilty and have a trial. I can have a jury trial or, if I give up my jury trial rights, I can have a trial by a judge alone. When I plead guilty, I give up my right to have a trial. If I went to trial, I would have all the rights listed below plus others.

I am presumed to be innocent. That means that I start out innocent — and stay innocent unless the District Attorney proves I committed the crime(s). I do not have to prove anything.

To convict me, the District Attorney must prove more than that I probably committed the crimes. The District Attorney has to prove me guilty "beyond a reasonable doubt". A reasonable doubt is the kind of doubt which would cause a normal, reasonable person to hesitate or halt or refuse to take any action at all in something very important to them.

I have the right to remain silent. Nobody can make me testify or talk about the case. No one can hold it against me if I remain silent. However, if I want to, I can testify (tell my story) at the trial. Also, I may call other people who will be my witnesses and testify for me. If I plead guilty, I give up this right.

I give up many important rights if I plead guilty. For example, if I do not plead guilty and have a trial, all the witnesses for the District Attorney must come to court and testify under oath. My lawyer may cross-examine them. My lawyer can ask them questions to see if they are telling the truth and if what they say is correct. I give up this right to confront and cross examine witnesses and many other rights if I plead guilty. The witnesses do not have to come in to Court – the District Attorney just reads to the judge a summary of what happened.

## JURY TRIAL OR TRIAL BY JUDGE

My lawyer has fully explained to me that I have a right to a jury trial. Nobody can take that right away from me. At a jury trial, twelve (12) people, all from Philadelphia, would be on the jury and hear the facts of my case.

If all twelve were convinced beyond a reasonable doubt that I was guilty, I would be found guilty.

If all twelve were not convinced beyond a reasonable doubt that I was guilty, I would be found not guilty.

If all twelve could not agree, I would not be convicted, although I might have another trial before a different jury.

I can help pick my jurors. Each juror would be questioned to make sure they would be fair. I can keep anyone off the jury who is shown to the judge to be unfair.

I can also keep [seven (7)] [____7____ (____)] people off the jury without giving any reason why I don't want them on the jury, and so can the District Attorney. My lawyer and I would decide together which people we want to keep off the jury.

If I give up my right to a jury trial, I still can be tried by a judge alone without a jury. The same rules would apply, except the judge alone decides whether or not I have been proven guilty beyond a reasonable doubt.

If I plead guilty, I give up my right to a jury trial, and I also give up my right to have a trial by a judge who would decide the case alone without a jury.

## PRE-TRIAL RIGHTS

I am also giving up my pre-trial rights. If I went to trial, before trial my lawyer could file motions, such as motions to keep out or "suppress" evidence. That means my lawyer could try to convince the judge that some of the evidence against me cannot be used at trial. This includes:

(1) statements I made to the police or other people;

(2) identifications people made of me; and

(3) anything that the police or others seized to use against me.

If I plead guilty, I also give up speedy trial rights and my right under Rule 600 to be tried within 180 days from the filing of the complaint.

I am also giving up all other pre-trial rights I might have.

If I already had a hearing on pre-trial motions, when I plead guilty I give up my right to appeal the decisions on those motions.