J-S29036-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL RAKEEM SPENCER | : | |
| | : | |
| Appellant | : | No. 275 MDA 2023 |

Appeal from the PCRA Order Entered January 17, 2023
In the Court of Common Pleas of Lycoming County
Criminal Division at No(s): CP-41-CR-0000882-2015

BEFORE:   MURRAY, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                **FILED: SEPTEMBER 18, 2023**

Michael Rakeem Spencer appeals from the post-hearing order that dismissed his timely filed Post Conviction Relief Act ("PCRA") petition. ***See*** 42 Pa.C.S. §§ 9541-9546. On appeal, Spencer presents two ineffective assistance of counsel claims, contending that his counsel was ineffective for having deficiently prepared for his trial, specifically in failing to recall certain witnesses that he avers would have been materially beneficial to his defense, and, too, was ineffective for not making an objection when the trial court addressed jury questions, but Spencer was not present in the courtroom. We conclude that Spencer has not demonstrated his counsel was ineffective and therefore affirm.

Spencer's convictions that are the subject of this PCRA matter relate to

---

[*] Retired Senior Judge assigned to the Superior Court.

his involvement in an April 18, 2015 shooting incident immediately outside of Club Imbibe in Williamsport, Pennsylvania. The evidence presented at trial showed that, while leaving the Club in the early hours of the morning, there was an altercation between Spencer and one of the victims, which ultimately involved Spencer retrieving a firearm and proceeding to indiscriminately fire at a crowd of people that included the target victims. Five bystanders were struck by the bullets fired from Spencer's gun. Among the witnesses presented by the Commonwealth at trial were Bahteem Sims and Adrian Stafford. Stafford, who had been present with Spencer for most of the evening prior to the shooting, testified that Spencer told him that he had repeatedly fired his weapon and, too, that Stafford saw Spencer's gun when the two of them left the area. Sims, while not present for the shooting, testified that Spencer told him to throw a firearm that had been in Spencer's closet into a river. However, according to Sims, the firearm had actually belonged to Stafford. The lower court provided the following additional factual and procedural summary in its opinion:

> [O]n July 29, 2016, following a jury trial, [Spencer] was found guilty of, among other charges: [one count of criminal attempt to commit homicide and four counts of aggravated assault]. [In addition, Spencer] was found guilty of numerous other related charges[.]
>
> On October 12, 2016, the court sentenced [Spencer] to an aggregate term of twenty-seven and a half … years to fifty-five … years of incarceration in a state correctional institution. …
>
> Petitioner filed a [p]ost-[s]entence [m]otion on October 31, 2016. Among the issues raised by [Spencer] in his [p]ost-[s]entence

[m]otion were that the court abused its discretion in sentencing [him] to consecutive sentences and that the evidence was insufficient to convict [Spencer] with respect to all of the counts. [Spencer's] [p]ost-[s]entence [m]otion was denied by [o]rder of [c]ourt dated January 30, 2017.

[Spencer] filed a timely notice of appeal. In his appeal, [Spencer] claimed that the evidence was insufficient to convict him of the offenses and that the verdict was against the weight of the evidence. By [o]pinion and [o]rder of the Superior Court dated February 22, 2018, the judgment of sentence was affirmed. [Spencer] subsequently sought allowance of appeal to the Pennsylvania Supreme Court, which [that Court] denied on August 20, 2018.

Petitioner filed a timely Post Conviction Relief Act … petition. There were various delays including, but not limited to, [Spencer] wanting to represent himself and then changing his mind and PCRA counsel initially filing a no[-]merit letter and changing her mind and filing an amended PCRA petition and a supplement thereto. The [PCRA] judge gave notice of his intent to dismiss several of the claims without holding an evidentiary hearing but directed further amendment and an evidentiary hearing with respect to the claims asserted in paragraphs 16, 17 and 18 of the [supplemental petition]. Shortly thereafter, the [PCRA] judge [specifically dismissed Spencer's claim as it related to jury instructions being given outside of his presence, finding it to have no merit and Spencer to have suffered no prejudice and, in that same general period of time, the judge] left the bench[, and a new judge was thereafter assigned to the present matter].

The evidentiary hearing [over issues associated with trial counsel's alleged failure to call certain witnesses] was continued several times due to issues with transporting [Spencer] to the evidentiary hearing. The evidentiary hearing was held on July 13, 2022.

\* \* \*

At the evidentiary hearing, PCRA counsel called as witnesses: [Spencer] and Bahteem Sims. Neither trial counsel nor [Commonwealth trial witness] Adrian Stafford was called as a witness by either party.

- 3 -

[Spencer] testified that he was 40 years old and had a ninth-grade education. He stated that he could not read and write that well but his reading has improved over the last 6 or 7 years because he has been taking classes since he was incarcerated. He was represented by Robert Cronin at his preliminary hearing and by Greta Davis and Ravi Marfatia at trial. He indicated that he did not meet Mr. Marfatia until the first day of trial.

[Spencer] testified that he was present at Imbibe on the date of the shooting. He did not see who did the shooting, but had heard shots close to him. Adrian Stafford was close to him at that time.

\*          \*          \*

[Spencer further] testified that [he and Ms. Davis] discussed witnesses right before trial. One of the people that he thought could testify for him was already a witness for the Commonwealth. [Spencer] also told Ms. Davis to call his uncle, Herbert Brown, as a witness. [Spencer] indicated that Judge Lovecchio gave them a lounge to use. They talked about calling David Baker as a witness but the Commonwealth "got to him" before Ms. Davis did. They also talked about Bahteem Sims.

During the trial, [Spencer] wanted Ms. Davis to recall Adrian Stafford as a witness for him. Stafford was a Commonwealth witness on the first day of trial. [Spencer] contends that Stafford never said that he saw [Spencer] shoot the weapon. [Spencer] also testified that his attorney tried to ask Stafford if he had a gun before and to ask if he beat his uncle Herbert Brown with it. [Spencer] thought that these questions were objected to but he did not understand why. The attorneys were called to the judge's bench and when Ms. Davis came back, it was not going to be done. They did not discuss recalling Stafford after that.

[Spencer] also wanted Ms. Davis to recall his cousin, Bahteem Sims, as a defense witness. [Spencer] indicated that Sims was there when Stafford entered [Spencer's] room in the morning. [Spencer] stated that everyone in the house was asleep when he got home. Sims saw Stafford come to [Spencer's] house the morning after the shooting and saw him in [Spencer's] bedroom. [Spencer] believed that Stafford put the gun in his room that morning and later that morning Sims took the gun out of his room.

[Spencer] noted that he and Stafford were both in Stafford's car

that night and they both drove to Philadelphia the next day in Stafford's car. The shirt was in Stafford's possession when it was turned over to the police. [Spencer] contends that the shirt Stafford provided to the police was not the shirt he wore that night to Imbibe. [Spencer] also noted that there was a small amount of gunshot residue on the shirt that Stafford turned in. [Spencer] contends that if he were the actual shooter, there would have been way more gun powder on the shirt.

[Spencer] also claimed that everybody was drunk or high that night, particularly [Christopher] Harrold[, a witness to the shooting]. He did not believe that his attorney questioned the witnesses about drinking or being under the influence that night and whether it would have affected their ability to recall. He also believed that he asked his attorney to request a jury instruction regarding intoxication but he did not believe any such instruction was given.

[During the same PCRA hearing,] Bahteem Sims testified that he was 18 years old in 2015, and he resided in the same residence with [Spencer] back then. [Spencer] is his cousin. He did not see [Spencer] come home on the night of the shooting as he may have been asleep or on his phone. When he got up in the morning, [Spencer] was asleep in [his] room. Stafford came to the residence early in the morning. Sims got up when he heard the door. Stafford went into [Spencer's] room and stayed there "for a while." He could not tell how long. Later, Sims received a call about getting rid of a gun. He found the gun in a closet in the room where [Spencer] had been sleeping, which is the same room that Stafford was in that morning. He sold the gun. Sims got arrested for tampering with evidence. He testified for the Commonwealth at trial. He was told before trial that he would get probation but the guilty plea and sentencing did [not] occur until after the trial.

Sims also testified that he had seen Stafford with a gun every time he saw Stafford before the shooting at Imbibe. [Spencer's] lawyer never talked to Sims before the trial.

On cross-examination, Sims testified that he was interviewed by PCRA counsel within the last few weeks, that he saw the summary of his proposed testimony in the witness certification and that the statements contained therein were all accurate. The Commonwealth then admitted Sims' witness certification as

Commonwealth Exhibit 1. On re-direct, Sims explained that Exhibit 1 was PCRA counsel's words, which described their conversation [as outlined, *supra*]. [In addition, Sims's testimony established that the firearm he was asked to dispose of actually belonged to Adrian Stafford.]

PCRA Court Opinion, 1/17/23, at 1-8 (record citations omitted).

After the hearing concluded, the PCRA court dismissed the remaining portion of Spencer's petition, which pertained to counsel's asserted ineffective assistance in failing to fully explore the testimony that both Stafford and Sims could have offered at trial. Spencer timely appealed from his petition's dismissal, and the relevant parties have complied with their respective obligations under Pennsylvania Rule of Appellate Procedure 1925. As such, this appeal is ripe for review.

On appeal, Spencer presents two questions for adjudication:

1. Did the PCRA err in finding that Spencer had not established ineffective assistance of counsel with respect to trial preparation and the failure to recall witnesses that would have been beneficial to the defense?

2. Did the PCRA court err when it failed to find that counsel was ineffective for not objecting to portions of the trial taking place outside of Spencer's presence, specifically during a portion of the jury instructions?

**See** Appellant's Brief, at 4.

In reviewing the dismissal of a PCRA petition, our purview "is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error." **Commonwealth v. Ousley**, 21 A.3d 1238, 1242 (Pa. Super. 2011) (citation omitted). "The PCRA court's credibility determinations, when supported by the record, are binding

- 6 -

on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions." ***Commonwealth v. Mitchell***, 105 A.3d 1257, 1265 (Pa. 2014) (citation omitted).

For challenges that assert ineffective assistance of counsel, we employ a well-settled set of precepts:

> We presume counsel's effectiveness, and an appellant bears the burden of proving otherwise. To establish ineffectiveness of counsel, a PCRA petitioner must plead and prove: [(1)] his underlying legal claim has arguable merit; [(2)] counsel's actions lacked any reasonable basis; and [(3)] counsel's actions prejudiced him. Failure to satisfy any prong of the ineffectiveness test requires dismissal of the claim. Arguable merit exists when the factual statements are accurate and could establish cause for relief. Whether the facts rise to the level of arguable merit is a legal determination.

***Commonwealth v. Urwin***, 219 A.3d 167, 172 (Pa. Super. 2019) (internal citations and quotation marks omitted) (brackets added). By way of further elucidation, as defined by our Supreme Court: "a defendant raising a claim of ineffective assistance of counsel is required to show actual prejudice; that is, that counsel's ineffectiveness was of such magnitude that it could have reasonably had an adverse effect on the outcome of the proceedings." ***Commonwealth v. Spotz***, 84 A.3d 294, 315 (Pa. 2014) (citations, brackets, and internal quotation marks omitted).

Spencer first avers that his trial counsel failed to adequately prepare for his trial. As the nucleus of this claim, Spencer suggests that, although they were already witnesses who testified on behalf of the Commonwealth, counsel should have interviewed Sims and Stafford before his trial because of the

"valuable testimony" they could have offered in his defense. Appellant's Brief, at 13. By failing to pursue these witnesses, counsel had "no reasonable strategy." *Id*.

We agree with Spencer's proposition that "[c]ounsel has a general duty to undertake reasonable investigations or make reasonable decisions that render particular investigations unnecessary." *Id*., at 12; *see Commonwealth v. Williams*, 141 A.3d 440, 463 (Pa. 2016). Furthermore, Spencer's rule statement as to when counsel will be found to be ineffective for failing to call a witness is apt: "[w]here a claim is made of counsel's ineffectiveness for failing to call witnesses, it is the appellant's burden to show that the witness existed and was available; counsel was aware of, or had a duty to know of the witness; the witness was willing and able to appear; and the proposed testimony was necessary in order to avoid prejudice to the appellant." *Commonwealth v. Chmiel*, 30 A.3d 1111, 1143 (Pa. 2011) (citation omitted).

Beyond providing these standards, however, Spencer does not provide any additional citations to the record or authority. Moreover, although he delves into what counsel should have elicited as it relates to Stafford's testimony, Spencer materially fails to discuss the utility of Sims's testimony. Notwithstanding these deficiencies, Spencer suggests that, despite Stafford's trial testimony indicating that he asked Spencer "if he had shot the victims[, … this line of questioning] could have been explored more, by bringing out the fact that he was standing right next to [Spencer] and did not see [Spencer]

shoot toward the victims." Appellant's Brief, at 13. If this path would have been pursued, "[t]he jury would have been able to consider whether … Stafford should have been able to see [Spencer] commit the shooting if in fact he was guilty." *Id*. Spencer also baldly argues that counsel should have presented evidence of Stafford's alleged bad acts by failing to file a Pennsylvania Rule of Evidence 404(b) notice, apparently as a way to impeach Stafford's testimony. *See id*.

Broadly, we are limited in our review of Spencer's ineffective assistance claims because, despite having a hearing, Spencer made no inquiry into counsel's reasonable basis for action or inaction. In other words, we do not have any testimony from trial counsel serving to provide any context to any of the discrete points now raised on appeal. "[A] lawyer should not be held ineffective without first having an opportunity to address the accusation in some fashion." *Commonwealth v. Colavita*, 993 A.2d 874, 895 (Pa. 2010), *overruled on other grounds by Commonwealth v. Bradley*, 261 A.3d 381 (Pa. 2021). Moreover, it is the PCRA court, not the appellate court, that is the appropriate forum for evidentiary and factual development. See *Commonwealth v. Shaw*, 247 A.3d 1008, 1017 (Pa. 2021) (citations omitted).

Based on what has been advanced in his brief, Spencer has not shown any arguable merit as it pertains to his underlying claim that trial counsel should have cast Stafford's testimony in a more negative or impeachable light. Although he alludes to trial counsel having been able to paint Stafford "as

violent[] and as an individual regularly in possession of the gun used to commit these offenses," Appellant's Brief, at 15, there has been no demonstration that impeachment would have been successful, that the specific instances of Stafford's violent conduct would have been admissible, *see* Pa.R.E. 608(b)(1) (a witness's character for truthfulness may not be attacked through extrinsic evidence of specific instances of the witness's conduct), or that Stafford, should he have been recalled, would have testified to anything inherently beneficial to Spencer's cause. Moreover, we emphasize the fact that Stafford testified on behalf of the Commonwealth and had ample opportunity to be cross-examined. *See* N.T., 7/26/16, at 127-44 (including an extensive cross-examination period from trial counsel). Without any *specific* indication that Spencer's counsel failed to act vis-à-vis Stafford and thereby prejudiced Spencer, we are left with only vague insinuations as to what counsel should have done differently at trial. Accordingly, Spencer has failed to demonstrate that his counsel was ineffective in this domain. *See* 42 Pa.C.S. § 9543(a) (a PCRA "petitioner must plead and prove" his entitlement to relief under the PCRA "by a preponderance of the evidence"); *Commonwealth v. Bretz*, 830 A.2d 1273, 1276 (Pa. Super. 2003) ("Inherent in this pleading and proof requirement is that the petitioner must not only state what his issues are, but also he must demonstrate in his pleadings and briefs how the issues will be proved.") (citation omitted).

As to the potential impact of the testimony Sims now offers, his trial testimony already materially covered these various points, illuminated, *supra*.

In particular, Sims testified, on cross-examination, that he had seen Stafford, and never Spencer, with the gun Sims retrieved from a closet and thereafter disposed of. *See* N.T., 7/27/16, at 37. Sims also discussed Stafford and Spencer's post-shooting trip to Philadelphia and further, immediately prior to this trip, that (1) Spencer had been sleeping in his room, (2) Stafford went into Spencer's room, the room with the closet ultimately containing the gun involved in the shooting, and (3) Stafford then proceeded to wake Spencer up. *See id*., at 35.

With Sims's trial testimony in mind, Spencer has not shown how further development of his testimony would have served to benefit him at trial. In fact, the PCRA court concluded the same: "[a]lthough Sims was not called as a defense witness, the desired testimony was elicited during trial when Sims was a witness for the Commonwealth." PCRA Court Opinion, 1/17/23, at 12. Moreover, the PCRA court found that there was no prejudice "because the jury actually heard Sims[']s testimony on this subject." *Id*. As Spencer has not shown any separation between Sims's trial testimony and the proffered testimony he faults his trial counsel for having not explored, Spencer has not shown that he received ineffective assistance of counsel.

At his second ineffective assistance of counsel claim, Spencer asserts that his counsel failed to object to jury instructions that were given outside of his presence during the jury deliberation process.

Pennsylvania Rule of Criminal Procedure 602(A) mandates that a "defendant shall be present at every stage of the trial including the impaneling

of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule." However, other than citing this Rule and other pieces of authority providing analogous support to that Rule, Spencer has failed to show that what transpired, which was at most a technical violation of Rule 602(A), constituted anything more than harmless error. **See Commonwealth v. Strong**, 836 A.2d 884 887 (Pa. 2003) (citation omitted) ("[A]n error may be harmless where the properly admitted evidence of guilt is so overwhelming and the prejudicial effect of the error is so insignificant by comparison that it is clear beyond a reasonable doubt that the error could not have contributed to the verdict."). Spencer has not directed us to any authority that compels the opposite conclusion or demonstrates that the court's actions resulted in *per se* prejudice.

During jury deliberations, the trial court addressed various jury questions apparently without Spencer being present, although, importantly, his counsel was there. **See** N.T., 7/29/16, at 85. In particular, the jury asked: "[w]hat does specific intent to kill, fully formed intent to kill, coconscious [*sic*] [o]f his intention mean, and beyond a reasonable doubt." **Id**. To answer the jury, the court reread jury instructions that had already been given and then added "some language." **Id**., at 88. The court expounded upon the phrase "specific intent to kill," stating that it "does not require planning or previous thought or any particular length of time. It can occur quickly. All that is necessary is that there be time enough so that [Spencer] can and does fully form an intent to kill and is conscious of that intention." **Id**. The court then

reread the definition it had already given for the term "reasonable doubt." ***Id***., at 89.

When Spencer was subsequently brought before the court, still during the jury deliberation process and just prior to the court being informed of the jury's verdict, the court informed Spencer what had happened:

> [the court] read to [the jury] the definition of specific intent to kill as defined in the first[-]degree murder [charge], but [it] didn't say premeditated. What [it] said was, specific intent to kill does not require planning or previous thought or any particular length of time. It can occur quickly. All that is necessary is there be time enough so that the defendant can and does fully form an intent to kill and is conscious of that intention. In decide [*sic*] whether the defendant had specific intent to kill [the jury] should consider all the evidence regarding his words and conduct and the attending circumstances that might show his state of mind.

 ***Id***., at 91. Immediately thereafter, when asked, Spencer stated that he did not have any concerns about the court's response to the jury's questions and further did not want to question his counsel about the information provided to the jury. ***See id***., at 91-92.

> In its subsequent opinion, the court concluded that
>
> Spencer's absence during the jury's deliberation when the court explained reasonable doubt and specific intent, despite his rule[-]based and constitutional right to be present, would have been harmless error. The jury did not hear a new or different charge in private; the jury heard verbatim what previously transpired in open court in the presence of [Spencer]. Furthermore, the verdict showed that the jury carefully considered all of the evidence and the court's instructions by deliberating for a significant time and actually acquitting [Spencer] on various charges.

PCRA Court Opinion, 12/14/20, at 11-12 (citations omitted).

While he explicitly maintains that his "absence without explanation to

the jury … prejudiced him … and had an effect on the verdict[,]" Appellant's Brief, at 17, Spencer fails to either refute the contents of the court's response to the jury's questions by, e.g., arguing that they were somehow legally inaccurate or outside of the scope of what the jury had already been apprised of, or show that launching some sort of contemporaneous objection would have been successful in ultimately altering the jury's verdict.

After a thorough review of the trial transcript and in the absence of *any* authority militating a different outcome, we conclude that Spencer was not prejudiced by his nonappearance during the at-issue jury question and answer period, which was materially limited in subject matter to reiterating and marginally expounding upon the jury instructions as they had already been given prior to the deliberation process.

As Spencer has failed to demonstrate that his counsel was ineffective, we affirm the order of the lower court, which dismissed his PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/18/2023